Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/03/2020 08:27 AM CST

- 56 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

Mogensen Bros. Land & Cattle Company,
a Nebraska partnership, appellee and
cross-appellant, v. Steven Mogensen,
appellant and cross-appellee.

Steven Mogensen, appellant and cross-appellee,
v. Keith Mogensen, appellee and
cross-appellant.

___ N.W.2d ___

Filed November 3, 2020.    Nos. A-19-326, A-19-327.

1. **Partnerships: Accounting: Appeal and Error.** An action for a partnership dissolution and accounting between partners is one in equity and is reviewed de novo on the record.

2. **Declaratory Judgments: Equity: Appeal and Error.** In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court, subject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

3. **Jurisdiction: Limitations of Actions: Waiver.** Unless a statutory time limitation is jurisdictional, the law typically treats a statute of limitations defense as an affirmative defense that must be raised or is waived.

4. **Waiver: Words and Phrases.** A waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right.

5. **Waiver: Estoppel.** To establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part.

6. **Actions: Accounting.** A cause of action for an accounting accrues when a plaintiff has the right to maintain and institute a suit.

- 57 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

7. **Corporations: Accounting: Proof.** Although the burden is ordinarily upon the party seeking an accounting to produce evidence to sustain the accounting, when another person is in control of the books and has managed the business, that other person is in the position of a trustee and must make a proper accounting.

8. **Partnerships.** The manner in which the parties dealt with each other during the life of the partnership may be considered in determining whether there was an agreement between the parties.

9. ____. In order to be a business opportunity, the business must generally be one of practical advantage to the entity and must fit into and further an established entity policy.

10. ____. If an opportunity is one in which the partnership has an actual or expectant interest, a fiduciary is prohibited from permitting his or her self-interest to be brought into conflict with the partnership's interest, and may not take the opportunity for himself or herself.

11. ____. If a partnership declines an opportunity, it no longer has an actual or expectant interest in that opportunity.

12. **Accounting: Evidence: Appeal and Error.** Although an action for an accounting is reviewed de novo, where credible evidence is in conflict on material issues of fact, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

13. **Claims.** A claim is liquidated when there is no reasonable controversy as to both the amount due and the plaintiff's right to recover.

Appeal from the District Court for Boone County: RACHEL A. DAUGHERTY, Judge. Affirmed.

David S. Houghton and Keith A. Harvat, of Houghton, Bradford & Whitted, P.C., L.L.O., and Jeffrey C. Jarecki, of Jarecki Maul, P.C., L.L.O., for appellant.

George H. Moyer, of Moyer & Moyer, for appellees.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Steven Mogensen appeals from an order of the district court for Boone County ordering Steven to pay an amount of $118,448.57 to Mogensen Bros. Land & Cattle Company

- 58 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

(hereinafter referred to as "Mogensen Bros." or "the partnership"), a Nebraska partnership. The order stems from two consolidated cases involving Mogensen Bros., whereby the partners agreed to dissolve the partnership and conduct an accounting of its profits and expenses.

Mogensen Bros. and Keith Mogensen cross-appeal the district court's alleged failure to award interest on the amount owed by Steven for his share of a settlement payment to Cedar Rapids State Bank (CRSB) for a previous partnership debt. Keith also cross-appeals the finding that he owed the partnership $129,922 in loan repayments.

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

On May 27, 2010, a direct suit was brought by Mogensen Bros. against Steven, alleging that Steven abused his duty of care to the partnership by refusing to sign the necessary documents to allow the partnership to participate in the U.S. Department of Agriculture (USDA) "Direct and Counter-Cyclical Payment Program." The complaint alleged that Steven's failure to sign the documents caused the partnership to lose $111,101 in federal farm program payments between the years of 2007 and 2010. The complaint was later amended to add 2011 and 2012 to the period of claimed damages and sought to remove Steven from the partnership.

On June 28, 2013, Steven brought a separate suit against Brian Mogensen and Keith, alleging that Brian and Keith violated the agreement establishing the partnership of Mogensen Bros. (Partnership Agreement), as well as various fiduciary duties, and denied Steven certain rights as an equal partner. The suit also sought a full accounting of the partnership's profits and assets and a dissolution of the partnership. On October 24, Brian was dismissed without prejudice.

On December 23, 2013, Keith filed an application for the appointment of a receiver for the partnership. On January 30, 2014, the district court appointed a receiver to "preserve

- 59 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

evidence, protect partnership assets, and alleviate acrimony among the parties."

On August 29, 2014, Keith moved the district court for an order directing the receiver to pay or renew two promissory notes due for payment at CRSB. The two notes had principal amounts due of $194,815.10 and $200,000. After Steven objected, a civil suit was filed by CRSB against the partnership, and each of the Mogensen brothers individually, to collect on the notes. The matter was ultimately settled after Brian and Keith paid CRSB the amounts due.

On May 3, 2016, the two lawsuits involving the Mogensen brothers, and the partnership between them, were consolidated for discovery and trial. After years of litigation, the parties reached a settlement agreement whereby Mogensen Bros. would be dissolved and the assets divided among Steven, Brian, and Keith in equal shares. The agreement also provided that Steven would "pay one-third of the principal and interest charges on the note financed through [CRSB] to the date of final Court approval of the Receiver's distribution." Finally, the settlement agreement provided that an accounting of all partnership profits and expenses should be conducted. The final accounting was set for trial on November 8, 2017.

After division of the partnership assets, the receiver filed an allocation and distribution report, seeking final approval of the distribution by the district court. The receiver's report was approved on November 7, 2017.

A trial on the final accounting of Mogensen Bros. took place on November 8 and 27 and December 11 through 14 and 20, 2017.

On January 4, 2019, the district court entered an order finding that Keith, as de facto managing partner of the partnership, had the burden to establish an adequate accounting. The order provided that the accounting was subject to a 4-year statute of limitations barring any claim for "alleged wrongdoing since prior to 2009." The order further provided that despite a provision in the Partnership Agreement prohibiting the payment of a salary to the partners for services rendered

- 60 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

to the partnership, there was a course of conduct among the partners that acquiesced to such "guaranteed payments" and Steven had knowledge of such.

The order made various findings as to whether allegedly self-dealing transactions by Keith were sufficiently supported by the accounting. The order also found that Keith did not usurp a partnership opportunity by purchasing land for himself and one of his sons. Finally, the order found that Keith owed the partnership $288,673, including $129,922 in loan repayments, and Steven owed the partnership $118,448.57 for losses sustained from the partnership's inability to participate in a USDA payment program. The district court declined to assess interest on the amounts owed by both Keith and Steven. It is from this order on the partnership accounting that Steven appeals and that the partnership and Keith cross-appeal.

## 2. Factual Background

Anthony J. Pruss III, a certified public accountant, was called as Keith's first witness. Pruss had acted as the accountant for Mogensen Bros. for approximately 20 years. Before Pruss began, Opal Mogensen, the mother of Steven, Keith, and Brian, was maintaining the bookkeeping for the partnership.

Pruss testified that he used the "'Mogensen Brothers Land and Cattle General Ledger'" to prepare tax returns for the partnership. The general ledger reflects a "transaction summary of all transactions" for the relevant tax years. The only verification of whether the entries in the general ledger were accurate is when the transaction amounts were compared to the balance of the partnership's checking account.

Keith began working for his father's company, Ranch & Farm Agricultural Systems, Inc. (Ranch and Farm), in 1973 when he graduated high school, and eventually, he became an equal shareholder along with his brothers, Steven and Brian. The three brothers began Mogensen Bros. as an informal partnership in 1974, which was formally organized in 1982.

Mogensen Bros. acquired its first farmland in 1974. Throughout the 1970's, the brothers rented out most of the

- 61 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

partnership's farmland while they worked construction for Ranch and Farm. The partnership acquired more land in the 1980's. In the early 1990's, Steven farmed the partnership land while Brian and Keith were working construction in different areas. At the time, Keith was working for Mogensen Steel Erectors, Inc. (Mogensen Steel). Brian is the principal shareholder of Mogensen Steel.

In 1985 and 1986, Keith went to Illinois to set up a grain storage building on behalf of Mogensen Steel, which job generated $331,000. The profits were paid to Mogensen Bros. and were used to place downpayments on land purchases. In 1991, Keith erected 14 dairy barns in Oklahoma, generating profits of $335,000 that were paid directly to Mogensen Bros. In 1994, Keith met with their accountants at the time, who told him that the money paid to Mogensen Bros. needed to be paid back to the company that generated it. Mogensen Bros. began paying back Mogensen Steel and Ranch and Farm a total of $665,000 in 1994, and the partnership still owed money as of 2000.

Steven filed suit to dissolve Ranch and Farm in January 2001. After the lawsuit was filed, Keith did most of the farming for Mogensen Bros. Keith testified that Steven has not participated in the Mogensen Bros. farming operation since around 2000 and has not approached him seeking any information related to the partnership prior to filing the instant lawsuit.

Keith testified that the brothers discussed dissolving Mogensen Bros. in 2000 and made proposals for the distribution of its land assets. The proposals included a balance sheet prepared by the partnership's accountants, reflecting, in part, $333,013 and $335,613 owed to Ranch and Farm and Mogensen Steel respectively.

Exhibit 96 is a note dated March 26, 2010, that was sent to Steven to inform him that his signature was needed for Mogensen Bros. to participate in the "ASC farm program" and that nonparticipation would cost the partnership $25,465. Keith testified that the program could have helped offset operating

- 62 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

and other costs for the partnership. Keith testified that Steven refused to sign the necessary farm program documents between 2008 and 2014. Exhibits 100 through 102 are notes sent from Opal to Steven regarding his refusal to sign off on the partnership's participation in the USDA farm program. Steven refused to sign the farm program documents without being paid directly in advance, despite being told that the program pays the partnership directly, not individual partners.

Several letters and ballots were sent to Steven between 2007 and 2012 regarding various partnership activities, and its possible dissolution, but they went unanswered. Both Keith and Brian agreed to the dissolution and distribution plan, but Steven did not respond.

Exhibits 120, 121, and 123 are correspondence from Julie A. Eklund, a director with the USDA, reflecting the amounts Mogensen Bros. would have received from the USDA payment program. Keith testified that he used the numbers reflected in exhibit 123 to determine the amount Mogensen Bros. would have received under the program. Exhibit 124 consists of handwritten notes reflecting the potential farm program payments for 2007 and 2008. Keith testified that the notes were written by a USDA Farm Service Agency employee.

Keith testified that Mogensen Bros. purchased the "Mateya place" in 2012 with financing through CRSB. Keith indicated that an agreement had been made among the partners in 1982 or 1983 to purchase the Mateya place. Keith noted that the partnership was unable to obtain funding from Farm Credit Services of America (FCSA), as it had with previous land purchases, because Steven refused to sign the appropriate documents.

Keith testified that he began receiving guaranteed payments from the partnership in 1986 or 1987. After litigation between the parties in 2005, Keith continued to receive such payments. The payment amounts were occasionally increased through ballot voting by the partners. Between 2005 and 2014, the payments increased from $350 per week to $500 per week to $900 per week. A ballot was sent to each partner in 2012,

- 63 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

but Steven did not return his. Keith testified that he did not receive any objection from Steven regarding the receipt of guaranteed payments. Keith testified that the partnership had a custom of paying partners for work performed since its inception and that Steven received guaranteed payments between 1987 or 1988 until 1994.

Keith testified that the "Fitzsimmons land" was purchased because it was near other land he owned and one of his sons, Morgan Mogensen, wanted to purchase his own land. Keith personally purchased the land and resold a portion to Morgan. Keith testified that the property was advertised around the Cedar Rapids, Nebraska, community and that Brian had agreed to the purchase of the land for Morgan. Keith did not talk to Steven about the purchase. Keith testified that he did not purchase the Fitzsimmons land for the partnership because he "wanted to save Mogensen [Bros.] money for something bigger and better." Later on, the Mateya place was purchased for the partnership.

Keith testified that the partnership "ran on cash" for a period of time because Steven refused to sign the necessary documents for the partnership to borrow money from FCSA. Eventually, a line of credit was established with CRSB after Keith and Brian were told by CRSB that it would lend money with just two of the partners' signatures. Keith further testified that he made a number of personal loans to the partnership between the years 1978 to 1982. He testified that those loans had not been fully paid off until 2007 or 2008. Keith discussed making the loans beforehand with Brian, but not with Steven.

On cross-examination, Keith testified that Opal, the partners' mother, took care of the books and records for the partnership, but acknowledged that it was his role to handle the financial responsibilities of the partnership. He testified that he was responsible for the financial records of Mogensen Bros. "[p]robably since 2002."

Keith testified that his process for keeping the partnership books was to "[g]o through the check blanks at the end of the month, the statements. Then you — and you'd code them."

- 64 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

Keith admitted that the partnership's entire bookkeeping was based on its checkbook, with no other records.

As of 2011, Keith and Brian each owned one-half share of Ranch and Farm. The general ledger showed various transactions between Mogensen Bros. and Ranch and Farm, including a payment to Ranch and Farm for "Equipment Rent." In 2011, Mogensen Bros. paid Ranch and Farm $11,340 in "Principal" for "Machine Hire."

Keith acknowledged that he received compensation for leasing equipment to the partnership. Keith indicated that the decision was based in part on a suggestion made by Pruss, the accountant for both the partnership and Keith personally, because Keith was doing most of the work for the partnership without earning outside income. Keith determined the rate charged for leasing the equipment, which he testified he set below the rates of a nearby rental company. Keith tracked the hours the machinery was used and what he was paid by the partnership.

Keith testified that he leased land to the partnership and that the lease agreements were signed and approved by Brian. Keith indicated that a lease agreement was sent to Steven but that he did not sign it. Keith determined what the lease terms would be, including the rental rate.

Exhibit 145 is a note signed by Brian stating, "I give permission to Keith . . . to loan money to Mogensen [Bros.] at any time." Keith testified that the note was signed shortly after the Partnership Agreement, around June 1982. The loans Keith made to the partnership total $36,416.25.

Exhibit 140 reflects the loans by Keith, as well as interest and principal payments made on the loans through 2005. Exhibit 140 shows a total of $258,966.42 paid to Keith on the loans between 1982 and 2005.

Keith agreed that the partnership made payments to his son Morgan, including approximately $40,000 for livestock. Keith testified that Morgan's cattle were sold alongside partnership-owned cattle because the sale brought in more money if the cattle were sold in larger lots. Keith testified that payment

- 65 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

of $140,000 to Morgan between 2005 and 2013 for labor "sounds kind of high." During that same time, another one of Keith's children was paid $7,000 by the partnership. The partnership also paid wages to Keith's other two children.

Exhibit 148 is a list of payments made by Mogensen Bros. to Mogensen Steel between 1994 and 2004. The total value of the notes is $325,000. Exhibit 148 shows an amount owed of $335,613 beginning in 1994. Keith could not explain why the balance reflected in exhibit 148 was higher than the sum of the notes in exhibit 149. Between 2005 and 2007, Mogensen Bros. paid Mogensen Steel $266,813 and no interest payments were made.

In 2008 and 2009, Mogensen Bros. paid Mogensen Steel $20,010 for leasing equipment and machine hire. Keith agreed to the price on behalf of the partnership. He did not ask Steven about leasing equipment from or loaning money to Mogensen Steel.

Exhibit 152 is a list of questions regarding potential partnership actions sent by Keith to Steven in 2007. Steven was asked whether he would sign for an operating note with FCSA, but he responded that he would like more information regarding the partnership's finances before answering. Keith testified that all of the partnership's financial information was available to Steven at Opal's house and that Steven never requested further information regarding the partnership.

Exhibit 155 is a copy of the lease agreements made for Mogensen Bros. to rent land from Keith and his wife and to purchase the production from the land. The agreements are for various years between 2005 and 2013.

Keith testified that he was not involved in documenting wages and hours of partnership employees or other bookkeeping but that employees would turn in a timesheet with hours worked and what was done. Exhibit 167 consists of "employee time sheets" that were handwritten and kept by various partnership employees, including Keith's children.

The vice president of CRSB testified that Mogensen Bros. had been a customer of CRSB for 10 years at the time of

- 66 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

trial. On August 7, 2015, Mogensen Bros. paid off two outstanding operating loans from CRSB and one loan from CRSB for the purchase of real estate. Note No. 4050 had a principal balance of $200,000 with an additional $15,775.01 of interest. Note No. 3855 had a principal balance of $194,280.82 with an additional $14,835.50 of interest. The two notes were paid by Keith and Brian as part of a settlement with CRSB's lawsuit against Mogensen Bros. to collect on the loans.

Pam Lovejoy, a financial officer for FCSA, testified that Mogensen Bros. had three loans with FCSA at the time of trial. Lovejoy acknowledged that the Partnership Agreement of Mogensen Bros. requires the signature of all three partners to obtain a loan. She testified that other than one of the outstanding loans, which required only one signature, FCSA has not been authorized to make a loan to Mogensen Bros. since 2003 because not all partners were willing to sign the necessary documents.

Lovejoy calculated an estimate of the amount of interest Mogensen Bros. would have paid on a loan from FCSA, including "patronage," compared to the partnership's commercial bank lender, CRSB. Patronage, in this case, is a certain amount that FCSA pays back to its customers as dividends from its profits. Exhibit 83 reflects Lovejoy's estimate that Mogensen Bros. would have saved approximately $13,231.37 from 2007 through 2011 and $26,431 from 2012 through 2016 by borrowing with FCSA.

Brian testified that he was involved in the agricultural aspect of the partnership between 1972 and the mid-1980's. Eventually, around 1989, Brian became less involved in the farming due to his construction business with Mogensen Steel. Despite his noninvolvement with the farming, Brian kept in touch with Keith regarding the farming operation weekly.

Brian also kept in touch with Keith regarding the partnership's financial condition. Brian was aware that Keith was leasing machinery and equipment to the partnership and acknowledged his approval of the land development done by Keith. Brian also approved the repayments made by Mogensen

- 67 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

Bros. to Keith and acknowledged that he had a "standing deal" with Keith to allow Keith to lend money to the partnership for cashflow purposes when needed. Brian testified that exhibit 145, the note he signed granting Keith permission to lend Mogensen Bros. money "at any time," was signed because he was often "on the road" and unable to sign a promissory note each time Keith needed to lend money. Brian testified that the concept of guaranteed payments was agreed to when the partners "sat around the table and figured out what was fair and reasonable."

When the Fitzsimmons land went up for sale, Brian told Keith that "it's right next to us, let's go for it," but when Keith raised the possibility that Morgan might buy a portion of the land, Brian responded that they "should give [Morgan] every chance and help him all we can to get started farming" and that Brian was no longer interested in the land.

Brian testified that he was aware of, and did not oppose, the partnership's renting equipment from Ranch and Farm. Brian testified that Keith charged "half" of the rental value of comparable equipment in the area when renting his personal property to the partnership. The rate Keith charged for equipment rental was "half price or no more than three-fourths price of what it would be off-the-street."

Brian testified that his most recent conversation with Steven regarding the partnership was in May 2017. He testified that he had not had any other conversations of substance with Steven regarding the partnership since 2002.

Opal, the mother of the three Mogensen brothers, testified that after she married Harry Mogensen, she farmed in Cedar Rapids while Harry traveled to Omaha, Nebraska, to do ironwork. Later on, Harry acquired a franchise to erect grain bins and other steel buildings. Ranch and Farm was initially incorporated by Harry, and Opal acted as the bookkeeper. Prior to his death in 2000, Harry transferred ownership of Ranch and Farm to his sons. Opal testified that she acted as bookkeeper and secretary for all of the various entities operated by the Mogensen family, including Mogensen Bros.

- 68 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

Opal testified that after the dissolution and sale of Ranch and Farm in 2003 or 2004, she took on the role of corresponding with Steven regarding Mogensen Bros. Opal testified that she "very seldom got a response" to letters she wrote to Steven regarding the partnership. She testified that there were attempts to amicably divide Mogensen Bros. among the partners.

Opal testified that she wrote back and forth with Steven because he "was not really welcome in [her] house" because she was "afraid of Steven for many years." Opal testified that on one occasion, Steven "stormed through the house" and grabbed some partnership papers and walked out the door. In response, Opal called the sheriff.

Kenneth Porter, a "heavy industry contractor," testified that he owns and is familiar with Caterpillar brand equipment. Porter testified that the rental value of a "D9-H and bulldozer" has remained around $170 per hour since 2005. He testified that the value of a "627-B Caterpillar . . . scraper" was about $160 per hour in 2005 and has increased around $20 since then to $180 per hour. Porter testified that this price includes the operator, the fuel, and the machine itself, as well as maintenance and transportation.

Steven acknowledged that in 2004, the parties stipulated that he could have access to all of the records of Mogensen Bros., but he claimed an attorney for "the bank" would not allow him to see the partnership records. Steven agreed that he had received some partnership bank statements, but he could not say whether he received a bank statement every month since the stipulation was entered.

Andrew Hoffman, the receiver appointed in this case, has been an attorney licensed in Nebraska since December 2004. Hoffman testified that a significant portion of his practice involves farmers and ranchers within the state. Hoffman was formally appointed to this case in January 2014.

Hoffman testified that he inspected each of the properties owned by the partnership. He testified that there were "3,654 [sic]" total acres: "2,478 of which are irrigated, 377 dryland, and 728 acres of grassland." He described the farming

- 69 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

practices of Mogensen Bros. as "conventional for this part of the country." Hoffman testified that over the course of the receivership, he did not have any issues with Keith's attempting to avoid the disclosure of partnership assets or money. Hoffman testified that Keith occasionally did work on the partnership land without approval of the receivership and "[s]ometimes" requested compensation for that work.

Hoffman testified that when he was appointed, there was $170,000 to $180,000 of prepaid credits at an agricultural cooperative. Once Hoffman decided to rent out the farmland, Hoffman worked with the cooperative to get the entire balance refunded. Hoffman noted in his report that $106,000 of prepaid fertilizer and $61,999 of prepaid diesel were refunded to the receiver's account and that the total refund was "either used to pay expenses or distributed to the partners."

A real estate broker and appraiser licensed in Nebraska testified that he was contacted to appraise the partnership's real estate in 2013 and valued it at approximately $22 million.

After the real estate broker's testimony, Keith rested his case in chief. Steven subsequently moved for a directed verdict in both cases, alleging that Keith had the sole responsibility to maintain the partnership's financial records and had not produced a "satisfactory accounting" as a matter of law. Keith disputed that he was solely responsible for maintaining the financial records, alleging that he became responsible due to Steven's inaction with the partnership. The district court denied the motion for a directed verdict.

Steven called Robert Kirchner as his first witness. Kirchner, a forensic accountant and certified fraud examiner, testified that his job as a forensic accountant is to "translate[] financial accounting and business data into the legal context so that judges and juries understand how . . . it applies in civil and criminal cases." As a certified fraud examiner, Kirchner specializes in the "examination of discovery of fraudulent financial transactions" and the "calculation of losses and damages that businesses and individuals suffer."

- 70 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

Kirchner testified that Steven and his attorney asked him to investigate (1) payments made by Mogensen Bros. to Keith and his family members, and the adequacy of the supporting documents for those payments; (2) payments made by Mogensen Bros. to Brian, Ranch and Farm, and Mogensen Steel; (3) the amount paid to the receiver in this matter; (4) the amounts identified as borrowed and spent in Keith's January 2014 affidavit, and the adequacy of the supporting documents; and (5) the amount of equipment bought and sold on behalf of Mogensen Bros. and whether the partnership records were adequate to support such.

Kirchner reviewed the pleadings and discovery of this case, the partnership income tax returns for 2006 through 2015, Keith's personal tax returns, the general ledgers for the partnership from 2008 onward, the depreciation schedule for partnership land and assets, the "All Transactions Reports" for 2005 through 2013, the "Guaranteed Weekly Payment Report," a loan transactions report, and various equipment lists.

Exhibit 158 reflects Kirchner's findings as to the payments made to Keith and his family members. Kirchner's findings reflect $243,700 was paid to Keith for guaranteed payments between January 2005 and January 2014. Keith was paid $80,990 for "Leasing Equipment" and $35,795 for "Machine Hire" between January 2005 and January 2014. Keith was paid $13,110 for "Equipment Rent" and $1,133 for "Shop Rent." He was also paid $182,115 for land leases with Mogensen Bros. as the tenant.

Kirchner testified that the loan history between Keith and the partnership reflects $36,416 in principal and $222,550 in interest payments made to Keith between 1983 and 2005. Between 2005 and 2011, $140,180 in principal and $60,028 in interest were paid to Keith, and $6,215 was paid to Keith for parts, supplies, repairs, et cetera. A $15,000 distribution was made to Keith, as well as Brian and Steven, in 2012.

Kirchner's testimony and conclusions based on his review of the evidence found total payments of $1,037,232 paid

- 71 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

to Keith; $190,685 paid to Morgan; and $23,385 paid to Keith's wife and his other children, between January 2005 and January 2014. Of the $80,990 paid for equipment leases, Kirchner was able to tie $65,330 to supporting documents. Of the $182,115 for land leases, Kirchner was able to tie $107,557 to supporting documents. None of the $23,385 in payments to Keith and his children were verified by supporting documentation.

Kirchner testified that it was his professional opinion that the supporting documents were inadequate for the various payments made to Keith and his family between 2005 and 2014. Kirchner explained that the general ledger alone was inadequate because it does not "fully explain the transaction." Kirchner noted that wages, for example, were not explained with figures such as how many hours were worked, what the hourly rate was, or what work was performed. For notes payable, Kirchner testified that the transactions lacked a written promissory note, a security agreement, an amortization schedule, an explanation of the purpose of the loan, et cetera. Kirchner further expressed his opinion that the general ledger's breakdown between principal and interest payments made to Keith was an inadequate accounting because there was no indication of how the amounts due were calculated, such as an amortization schedule.

Exhibit 158 reflects Kirchner's findings as to payments made from Mogensen Bros. to Ranch and Farm for equipment purchases and rental between 2007 and 2011. There was also approximately $349,420 in payments on notes payable to Ranch and Farm. These payments amount to $333,013.31 in principal and $16,407 in interest. Exhibit 158 reflects $306,823 in total payments from Mogensen Bros. to Mogensen Steel between 2005 and 2014. Kirchner opined that the documentation was inadequate to support the payments to Ranch and Farm and Mogensen Steel.

A table in exhibit 158 is a comparison between the general ledger produced and Keith's January 2014 affidavit regarding a December 2013 loan taken out on behalf of the

- 72 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

partnership. A total of $380,500 was borrowed and accounted for in the general ledger. Keith's affidavit claims $420,000 was borrowed from CRSB in December 2013 but allocates only $412,000 of such to specific expenses. Kirchner found that Keith's affidavit reflects an excess expenditure of $148,816 that was not accounted for in the general ledger, plus an additional $17,086 in attorney fees that was disputed by the parties, for a total of $165,902. Despite being able to track payments totaling $231,684 related to the 2013 loan within the general ledger, Kirchner opined that such was inadequate to support the payments due to the lack of documentation.

Kirchner opined that the records produced were inadequate to support a determination of the partnership's assets and liabilities. He testified that his opinion was largely due to the lack of supporting documentation for various claimed payments and a stated purpose of the transactions. He also testified that the tax returns and general ledger fail to account for the value of certain assets, such as equipment, due to the depreciation reflected in those documents.

Steven was recalled as a witness in his own behalf. Steven testified that he is familiar with the partnership real estate and that he has around 40 years of farming experience. Steven testified that he observed Keith's farming practices between the years of 2007 through 2013 and opined that Keith did not exercise good farming practices during that time. Steven disagreed with Keith's practice of "plowing waterways shut and discing deeply, and not having enough crop residue." He testified that such practices caused erosion, runoff, and the loss of topsoil.

Steven testified that he checks the partnership property about every 2 months but was not paid a wage or salary for such work since 2007. Steven indicated that he personally farmed the "Richards farm" every year and would "fix all the ditches," "rent [a] soil mover," or "use [a] backhoe or skid steer and . . . put drainage pipe in and terraces, and culvert and any way [he] could to stop runoff."

- 73 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

Steven testified that he was made aware by letter of Keith's and Brian's desire to enroll the partnership in a USDA farm program but that no meeting was scheduled to discuss the matter. Steven was notified about the program "at least four" times. Steven testified that once he received the letter, he contacted the USDA sometime around 2007 or 2008. Steven testified that he did not believe he would receive a proportionate share of the proceeds from the program because of the way his "brother was handling the business."

Exhibit 171 is an appendix to the form used for application to the USDA farm program. It indicates that intentional or fraudulent misrepresentation by the partnership could result in civil or criminal liability of the individual partners.

Steven indicated that at the time he was asked to sign the USDA farm program contract, he had not been informed of the partnership business for several years. He testified that he made an effort to look at partnership records at Opal's home but that after she called the sheriff, he did not attempt to return because he "didn't want to involve the police department." Steven testified that he was concerned there may have been intentional or fraudulent misrepresentation by the other partners and that he did not want to subject himself, or the partnership, to liability. Steven testified that he did not sign the USDA farm program contract because he "knew that [Keith] was never complying with the farm program, and [he] also felt in the best interest of the government that [he] would be committing fraud."

According to Steven, he drove to the "ASC office" approximately four times to discuss the requirements of the farm program and his concerns with Keith's current farming practices. Steven testified that a USDA employee advised him not to sign the contract because he believed Steven was "telling the truth" and the partnership was not complying with the required farming practices of the program. Steven testified that he ultimately signed the documentation to enroll the partnership in the farm program after the receiver was appointed because

- 74 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

he felt the receiver "would get the issue taken care of where [the receiver] would be a better steward to the land."

Steven testified that he believed various notes to Mogensen Steel, Ranch and Farm, and Keith individually were "[f]ictitious" and amounted to "fraud."

Steven recalled Keith to the witness stand to testify. Keith acknowledged that the Partnership Agreement requires that all partners agree prior to borrowing money for the partnership. He further acknowledged that the decision to begin renting his equipment to the partnership was based, in part, on his accountant's advice that he needed to consider his own personal interests. He also admitted that he wanted a depreciation deduction to offset his personal income and was tired of farming with "junk" equipment that he had purchased and "wore out" doing partnership work.

After Keith's testimony, Steven rested his rebuttal case. The parties submitted briefs in lieu of oral closing arguments.

### III. ASSIGNMENTS OF ERROR

Steven assigns, consolidated and restated, that the district court erred in finding that (1) the action for an accounting was barred, in part, by the statute of limitations; (2) various evidence and testimony was sufficient to support the accounting and that Keith owed "'only'" an amount of $288,673 to the partnership; (3) there was a course of conduct among the partners that the partner working for the partnership was entitled to a "'guaranteed payment'"; (4) Keith did not usurp a partnership opportunity; (5) Steven owed the partnership $118,448.57 for losses sustained; and (6) no interest was owed by Keith to the partnership.

Mogensen Bros. and Keith assign on cross-appeal that the district court erred in failing to award interest on the amount Steven owed to Keith and Brian for Steven's share of the settlement payment to CRSB. Keith also cross-appeals the finding that he owed the partnership $129,922 in loan repayments made to him by the partnership.

- 75 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

## IV. STANDARD OF REVIEW

[1,2] An action for a partnership dissolution and accounting between partners is one in equity and is reviewed de novo on the record. *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018). In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court, subject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Id.*

## V. ANALYSIS

### 1. STEVEN'S APPEAL

#### (a) Statute of Limitations

Steven argues that the district court erred in determining that the accounting was subject to a 4-year statute of limitations that barred a claim for any alleged wrongdoing prior to 2009. Because this assignment of error determines the scope of the accounting as a whole, we address it first. Steven first argues that "Keith waived or failed to preserve any such affirmative defense at the time of the Settlement Agreement." We disagree. We also agree with the district court that an action for accounting in Nebraska is subject to a 4-year statute of limitations, which applies in this case.

[3] We first find that Keith did not waive or fail to preserve the statute of limitations affirmative defense. Unless a statutory time limitation is jurisdictional, the law typically treats a statute of limitations defense as an affirmative defense that must be raised or is waived. *Karo v. NAU Country Ins. Co.*, 297 Neb. 798, 901 N.W.2d 689 (2017). In these cases, the statute of limitations defense was specifically pled within Keith's responsive pleadings to Steven's counterclaim and separate lawsuit seeking an accounting. Steven claims that because the parties' settlement agreement resolving all issues between

- 76 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

the parties, save for the accounting, did not limit the scope of the accounting, Keith has failed to preserve the statute of limitations defense. However, the partial settlement specifically left unresolved issues related to the accounting.

[4,5] We decline to find that any affirmative defense that was not realleged at the time of the settlement was waived. A waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right. *Omaha Police Union Local 101 v. City Of Omaha*, 292 Neb. 381, 872 N.W.2d 765 (2015). To establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part. *Id*. Nothing in the record indicates Keith's intention to abandon the affirmative defenses previously pled in response to Steven's action for an accounting. Keith did not expressly waive the statute of limitations defense, and we reject this argument.

Steven also argues that the statute of limitations for an accounting does not begin to run until the partnership is dissolved and there is a winding up. We disagree. Partnerships in Nebraska are governed by the Uniform Partnership Act of 1998, Neb. Rev. Stat. § 67-401 et seq. (Reissue 2018), which is Nebraska's counterpart to the model act known as the Revised Uniform Partnership Act (RUPA). See *Elting v. Elting*, 288 Neb. 404, 849 N.W.2d 444 (2014). Section 67-425 provides in relevant part:

(2) A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to:

(a) Enforce the partner's rights under the partnership agreement;

(b) Enforce the partner's rights under the Uniform Partnership Act of 1998[.]

. . . .

- 77 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

(3) The accrual of, and any time limitation on, a right of action for a remedy under this section is governed by other law. A right to an accounting upon a dissolution and winding up does not revive a claim barred by law.

RUPA "compel[s] partners to litigate their claims during the life of the partnership or risk losing them." Unif. Partnership Act (1997) § 405(c), comment 4, 6 (part I) U.L.A. 150, 152 (2001). While Steven is correct that the parties' settlement, and the subsequent order by the district court, provides for "an accounting of all partnership profits and expenses of Mogensen Bros.," it does not permit Steven to litigate claims outside of the applicable statute of limitations.

Steven cites to the Nebraska Supreme Court's decision in *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019), in arguing that "the statute of limitations does not begin to run until the partnership is dissolved and there is a winding up" of the business. Brief for appellant at 19. However, Steven's reliance on *Weyh* is misplaced. In that case, the partners "did not settle up at the end of each farming year" and agreed that, once one partner decided to end the farming operation, the managing partner "would provide an accounting and the net profits would then be determined and distributed equally." *Weyh v. Gottsch*, 303 Neb. at 283, 284, 929 N.W.2d at 45. In this case, the Partnership Agreement specifically provides for annual accounting books that are to be accessible by any partner at "all times": "Books of Account. The partnership shall maintain adequate accounting records. All books, records and accounts of the partnership shall be open at all times to inspection by all partners."

[6] The basis for Steven's action for an accounting is that he was wrongfully excluded from accessing the partnership books since approximately 2002, when he first sought an accounting. A cause of action for an accounting accrues when a plaintiff has the right to maintain and institute a suit. *American Driver Serv. v. Truck Ins. Exch.*, 10 Neb. App. 318, 631 N.W.2d 140 (2001). Therefore, Steven's cause of action first accrued when he was allegedly excluded from the partnership books, not

- 78 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

at the time the partnership was dissolved and there was a winding up. *Weyh v. Gottsch, supra*, is distinguishable because there was no annual settling up or annual accounting record that each partner had an equal right to access and inspect, as there is in this case. Therefore, in *Weyh*, there could be no breach until the final accounting was completed and the defendant failed to make payments the plaintiff allegedly was entitled to under their oral contract.

Thus, we find this case to be distinguishable from *Weyh* and governed, instead, by our decision in *American Driver Serv. v. Truck Ins. Exch., supra*. In *American Driver Serv.*, we found that "[a]n equity action for an accounting is subject to a 4-year statute of limitations." 10 Neb. App. at 323, 631 N.W.2d at 145. See Neb. Rev. Stat. § 25-207 (Reissue 2016). Section 25-207 provides:

> The following actions can only be brought within four years: (1) An action for trespass upon real property; (2) an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; (3) an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated; and (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud . . . .

Although not binding on this court, we find this case analogous to *Fike v. Ruger*, 754 A.2d 254 (Del. Ch. 1999), *affirmed* 752 A.2d 112 (Del. 2000), and *Baghdady v. Baghdady*, No. 3:05-cv-1494, 2008 WL 4630487 (D. Conn. 2008). In *Fike*, the Delaware court applied RUPA in finding that "once such actions were permitted, they should be regarded as 'accruing' for purposes of statutes of limitations at the time of their occurrence, even in the context of partnerships subject to dissolution . . . ." 754 A.2d at 263. In this case, Steven alleges a number of breaches of fiduciary duties by Keith, as they relate to the accounting. Specifically, Steven alleges that Keith breached his duties by failing to account to Steven,

- 79 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

engaging in self-dealing transactions, and usurping partnership opportunities.

The facts of this case are similar to those in *Baghdady v. Baghdady, supra*. In that case, the parties did not dispute that the managing partner stopped providing financial information to the other partner in 1996. Applying Connecticut's 6-year statute of limitations for an accounting, the court held:

> [T]he statute of limitations on [the plaintiff's] claim for an accounting ran sometime in 2003, six years after [the defendant] refused to provide the information [the plaintiff] requested. . . . [A] separate claim for an accounting based on [the defendant's] failure to provide financial information—and indeed, any alleged wrongdoing prior to 1996—is barred by the statute of limitations.

*Baghdady v. Baghdady*, 2008 WL 4630487 at *9.

A comparable situation is now before us. Steven argues that he was wrongfully excluded from full access of "[a]ll books, records and accounts of the partnership." This is the same claim that Steven made in his 2002 lawsuit seeking an accounting and again in a 2004 counterclaim. Both accountings were denied. In the present case, we agree with the district court that the 4-year statute of limitations applies to Steven's claim for an accounting and find that it was not in error to rule that any alleged wrongdoing prior to 2009, 4 years before Steven's complaint in this case was filed, was time barred.

### (b) Sufficiency of Accounting

At the center of Steven's appeal is his argument that Keith did not meet his burden in accounting for various transactions on behalf of the partnership. Along those lines, Steven also argues that the district court erred in determining that Keith owed "'only'" an amount of $288,673 to the partnership. We will address each of the transactions in turn.

### (i) General Ledger

Steven first assigns that the district court erred in "generally determining that the General Ledger offered by Keith, as

- 80 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

the managing partner, was a sufficient accounting." In order to address this assignment of error, we review some of the basic principles of partnership accounting.

[7] Under § 67-445, partners are entitled to an accounting upon the winding up of the business of a partnership. Although the burden is ordinarily upon the party seeking an accounting to produce evidence to sustain the accounting, when another person is in control of the books and has managed the business, that other person is in the position of a trustee and must make a proper accounting. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

The evidence shows that Keith managed the business of the partnership and its finances since approximately 2002, even if by default. Therefore, we agree with the district court that the burden to establish a sufficient accounting was with Keith.

Although Steven argues that he was denied access to the financial records of the partnership, the evidence shows that he was permitted full access but simply failed to involve himself in the partnership's affairs. 68 C.J.S. *Partnership* § 526 (2020) discusses the presentation of partnership books as evidence in an accounting action:

> In a suit for an accounting of the affairs of a partnership, the partnership books are admissible in evidence, even where the entries were made by one partner alone, provided that each partner had access to the books at or soon after the time the entries were made. Such books are admissible for the purpose of showing the state of partnership affairs and are competent to show the terms of the contract of partnership, particularly as against a partner who kept or directed their keeping. The evidential value of the partnership books depends on the extent of the access to them of the various partners and the acquiescence of the partners in the manner in which the books were kept.

Based on these principles, we cannot broadly state that the general ledger was insufficient to support the partnership

- 81 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

accounting. We therefore turn to the individual transactions Steven alleges were not adequately supported by the evidence.

### (ii) Leased Equipment

Steven argues that the district court erred in determining that payments for equipment leased from Ranch and Farm and Mogensen Steel were supported by the accounting or otherwise outside of the statute of limitations. Specifically, Steven takes issue with $88,240 in payments to Ranch and Farm between 2008 and 2011 and $20,010 in payments to Mogensen Steel between 2008 and 2009.

### a. Ranch and Farm

The general ledger reflects that Mogensen Bros. made payments to Ranch and Farm for leased equipment in the following amounts: $4,545 in 2008; $17,140 and $22,765 in 2009; $17,150 in 2010; and $11,340, $11,300, and $4,000 in 2011. Of the payments made in 2009, the $17,140 was for equipment leased in 2008.

First, we agree with the district court that the payments for equipment leased in 2008 are outside of the statute of limitations. Next, we find that the payments made between 2009 and 2011 are adequately supported by the evidence. Exhibit 154 provides a breakdown of the equipment rented, the rental rate, and the hours the equipment was rented for. Furthermore, although Keith set the rate at which Mogensen Bros. rented the equipment from Ranch and Farm, testimony from Brian and Porter, a "heavy industry contractor," show that the rate was far below the market rate. We find the evidence sufficient to support the accounting of payments made to Ranch and Farm for leased equipment.

### b. Mogensen Steel

The general ledger reflects that Mogensen Bros. made payments to Mogensen Steel for leased equipment in the following amounts: $15,210 in 2008 and $3,500 and $1,300 in 2009. We find the 2008 payment for $15,210 falls outside the

- 82 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

applicable statute of limitations. We further agree with the district court that the 2009 payment for $3,500 was adequately accounted for but that Keith failed to account for the $1,300 payment made on May 1, 2009, for "trenching." Exhibit 154 again shows the same information regarding the leased equipment as it does for Ranch and Farm and encompasses the $3,500 paid on December 1, 2009, by Mogensen Bros. It does not show supporting information for the $1,300 payment, which the district court found Keith failed to account for. We agree.

#### (iii) Leased Land and Shop

Steven disputes $173,115 in payments made to Keith by the partnership for land leases between 2005 and 2013. The district court found that $9,000 in land leases and $1,133 for shop rent of the total $182,115 paid to Keith was not supported by the evidence. Exhibit 155 includes several of the lease agreements for two tracts of land owned by Keith and his wife, which tracts were 314 acres and 120 acres, respectively. Each of these lease agreements was signed by both Keith and Brian, but not by Steven. Keith testified that the lease agreements were also sent to Steven but that he did not return them. Although Keith acknowledged that he set the rate at which the partnership would rent the land, the evidence shows that the rate was well below the market value. Brian testified that he was aware Keith was renting his land to the partnership.

The general ledger shows that $11,557.50 was paid to Keith for the lease of 120 acres at section "34-19N-Range 7W" in both 2005 and 2006. In 2007 through 2009, leases for this tract were paid at $18,000 annually. A second lease was for 314 acres located at section "35-19-7W." The general ledger shows $10,000 was paid for the years 2005 through 2010 and $12,000 was paid in 2011 through 2013. In total, the written leases within exhibit 155 and the general ledger support the $173,115 in land leases.

- 83 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

### (iv) Loan Payments

Steven also asserts that Keith made self-dealing loan repayments to himself, Mogensen Steel, and Ranch and Farm that were not approved by all of the partners and were not supported by the accounting.

### a. Mogensen Steel and Ranch and Farm

Steven disputes $266,813 in loan repayments that were paid to Mogensen Steel between 2005 and 2007 and $333,013 in loan repayments made to Ranch and Farm between 2007 and 2010. Keith testified that $335,000 was paid to Mogensen Bros. for work he did for Mogensen Steel in the 1990's. However, in 1994, the partnership's accountants informed Keith that this money needed to be paid back to the entity that generated it. The money paid to Ranch and Farm was for repayment on a promissory note.

In 2000, the Mogensen Bros. partners discussed various options for dissolving the partnership. As part of those discussions, Steven was provided exhibit 93, which shows liabilities to Mogensen Steel for $335,613 and to Ranch and Farm for $333,013. This information was also attached to Steven's affidavit in his 2002 lawsuit. We agree with the district court that any dispute Steven has with these loan repayments is outside of the applicable statute of limitations.

### b. Keith

Steven also disputes $258,966 in loan repayments made to Keith between 1982 and 2005 and $200,208 paid between 2005 and 2011. The evidence shows Keith loaned the partnership $36,416.25 between 1982 and 1985. Per the Partnership Agreement, these loans were to accrue interest at a rate of 12 percent.

First, we agree with the district court that the $258,966 in loan repayments made between 1982 and June 2005 are outside of the applicable statute of limitations. We also find that the loan repayments made between June 2005 and 2008, in the amount of $70,285, fall outside the statute of limitations.

- 84 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

After finding that all loan repayments prior to 2009 were outside of the statute of limitations, the district court found that the remaining loan repayments, in an amount of $129,922, were not adequately supported by the accounting. Keith was ordered by the district court to pay back to the partnership this amount. We discuss this further below in addressing Keith's cross-appeal.

### (v) Payments to Keith's Children

Steven next takes issue with $140,914 in wages paid to Keith's son Morgan for work done for the partnership between 2005 and 2013. Keith testified that Morgan has "done everything from putting fence in to feeding cattle to working cattle, processing cattle, planting crops, [and] spraying crops" for the partnership. Exhibit 167 was introduced by Keith and includes several papers with handwritten dates and hours worked by Keith's children and other employees. Although the timesheets are not exhaustive and do not perfectly represent the hours Morgan was paid for and his wages, we agree with the district court that there is no indication that such payments were self-dealing or otherwise a breach of Keith's fiduciary duties. "The requirements for strict proof in actions for accounting may be relaxed, but there must be some substantial evidence on which to base an accounting." 59A Am. Jur. 2d *Partnership* § 672 at 667 (2015). We find no error by the district court in finding that the wages paid to Morgan for a period of 9 years were sufficiently accounted for.

### (vi) Sale of Cattle

Steven also argues that $40,045 paid to Morgan by the partnership for the sale of Morgan's personal livestock was not sufficiently accounted for. Keith testified that the payment to Morgan was made because Morgan's cattle were sold alongside partnership-owned cattle because the sale brought in more money to sell the cattle in larger lots. We find that this sale method was beneficial to both Morgan and the partnership because it allowed each to obtain a better price than would

- 85 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

have been obtained in separate sales. This payment was not improper, and the evidence was sufficient for the accounting.

### (vii) December 2013 CRSB Loan

Finally, Steven argues that Keith did not adequately account for $380,500 borrowed from CRSB in December 2013. However, both Steven and his expert acknowledged that the funds were used for the following purchases: $106,000 for prepaid fertilizer, $108,598 for real estate taxes, and $17,086 in attorney fees for the partnership. The $106,000 for fertilizer was later reimbursed to the receiver. Additionally, the CRSB funds were used to purchase $61,999 in prepaid diesel. This amount was also reimbursed to the receiver. Another $70,938 was used to purchase a pivot on December 30, 2013. Whether or not the expenses were paid for exclusively with the December 2013 CRSB loan, additional payments of approximately $18,000 for irrigation well columns and $30,000 for miscellaneous expenses were made according to Keith's affidavit and his testimony at trial. Based on this evidence, we find that the December 2013 loans were accounted for.

### (viii) Summary

Based on the foregoing, the district court did not err in failing to find that Keith owed any amounts beyond the $288,673 to the partnership.

### (c) Guaranteed Payments

Steven also argues that the district court erred in finding that there was a course of conduct among the parties whereby the partner working for the partnership was entitled to a guaranteed payment. We find no error.

Steven argues that Keith was paid $243,700 in guaranteed payments since 2005, in direct conflict of the terms of the Partnership Agreement and § 67-421, and that the district court improperly allowed such payments. Paragraph 13 of the Partnership Agreement provides: "Salaries. No partner shall receive any salary for services rendered to the partnership." Section 67-421(8) provides: "A partner is not entitled

- 86 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership."

Despite the terms of the Partnership Agreement and § 67-421, the evidence shows that all partners received such guaranteed payments throughout the course of the partnership. As is acknowledged by Steven in his reply brief, "RUPA's default rules are gap-filling rules" that may be changed by the parties. Reply brief for appellant at 1. See *Shoemaker v. Shoemaker*, 275 Neb. 112, 745 N.W.2d 299 (2008). The evidence also reflects that Steven was apprised of the payments and was afforded the opportunity to voice his objections and opinions on such, but refused to respond to communications regarding partnership matters. Specifically, Steven was sent letters requesting his input on the rate of guaranteed payments in 2007 and 2012 and did not respond. Brian testified, and the evidence supports, that he approved the payments made to Keith between 2005 and 2014.

[8] Although Steven may not have explicitly agreed to the guaranteed payments, it is clear he was aware the payments were being made and his refusal to participate in the partnership's affairs precludes him from now disputing the payments. In *Smith v. Daub*, 219 Neb. 698, 703, 365 N.W.2d 816, 820 (1985), the Supreme Court held that "the manner in which the parties dealt with each other during the life of the partnership may be considered in determining whether there was an agreement between the parties." Brian approved the guaranteed payments. Steven's conduct in essence acquiesced to them. We therefore agree with the district court that there was a course of conduct among the partners and that Keith, as the party working for the partnership, was entitled to receive the guaranteed payments pursuant to the partners' agreement.

### (d) Usurpation of Partnership Opportunity

[9-11] Steven also contends that the district court erred in determining that Keith did not usurp a partnership opportunity by purchasing certain property for himself and his son

- 87 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

Morgan. We disagree. The Supreme Court has stated that "'in order to be a [business] opportunity, the business must generally be one of practical advantage to the [entity] and must fit into and further an established [entity] policy.'" *Anderson v. Bellino*, 265 Neb. 577, 588, 658 N.W.2d 645, 656 (2003). If such opportunity is one in which the partnership "has an actual or expectant interest, a fiduciary is prohibited from permitting his or her self-interest to be brought into conflict with the [partnership's] interest, and may not take the opportunity for himself or herself." *Trieweiler v. Sears*, 268 Neb. 952, 993, 689 N.W.2d 807, 844 (2004). Although it is true that the purchase of the Fitzsimmons land may have advanced a partnership objective, it is also true that there can be no usurpation of a partnership opportunity where the partners declined to take advantage of such opportunity. If the partnership declines the opportunity, it no longer has an actual or expectant interest in that opportunity.

In this case, Keith disclosed the availability of the Fitzsimmons land to Brian, but Brian indicated that they should provide Morgan the opportunity to start his own farming operation and said that Brian was no longer interested in the property. While Keith testified that he did not discuss the availability of the Fitzsimmons land with Steven, the evidence shows that Steven was not cooperating with partnership activities and had previously opposed Keith's purchases of land for the partnership. Furthermore, the property was publicly advertised and Steven did not take action to express his interest in acquiring the property for the partnership. We find that Keith did not usurp a partnership opportunity by purchasing the Fitzsimmons land for himself and his son Morgan.

### (e) Amount Owed by Steven

Steven also argues that it was in error for the district court to find that he owed the partnership $118,448.57. Specifically, the district court found that due to Steven's refusal to sign the requisite paperwork for the USDA farm program, the partnership lost $29,691 for 2007, $24,580 for 2008, $25,481 for

- 88 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

2009, and $25,465 for 2010. The district court also found that Steven's actions resulted in a loss of $13,231.57 through lower interest rates and patronage when he refused to sign for loans through FCSA, causing the partnership to instead obtain loans with CRSB. We find no error.

We first note that the damages claimed by the partnership are not barred by the 4-year statute of limitations. This case is the product of two separate cases that were consolidated for the purposes of trial and were again consolidated on appeal. While Steven's lawsuit was filed in 2013, the partnership filed its lawsuit against Steven on May 27, 2010, alleging damages sustained from Steven's refusal to sign the necessary paperwork for the partnership to participate in the USDA farm program. Therefore, the damages awarded for the years 2007 through 2010 are not barred by the statute of limitations.

[12] The evidence is clear, and Steven admitted in his testimony, that he refused to sign paperwork with the USDA that would have allowed the partnership to enroll in the USDA farm program and receive payments for the years 2007 through 2010. While Steven testified that he refused to sign the paperwork because he feared that the partnership finances and Keith's farming practices did not adhere to the USDA's requirements, the district court found that his testimony was not credible. Although we review an action for an accounting de novo, "where credible evidence is in conflict on material issues of fact, [we] may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another." *Fredericks Peebles v. Assam*, 300 Neb. 670, 682, 915 N.W.2d 770, 780 (2018). We find that the losses calculated by the district court for the years 2007 through 2010 are supported by the evidence, specifically exhibits 123 and 124, which are USDA Farm Service Agency worksheets for 2009 and 2010 and the handwritten farm program figures for 2007 and 2008, calculated by a Farm Service Agency employee.

We further find that the $13,231.57 in losses sustained due to Steven's refusal to sign loan documents with FCSA

- 89 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

is supported by the evidence. Steven was aware that his signature was necessary to obtain loans with FCSA and nevertheless refused to cooperate with the partnership affairs. Although Steven indicated that he would like to obtain more information regarding the partnership's finances before signing the loan documents, the evidence shows that Steven had access to the partnership's books despite his contention to the contrary. Lovejoy, a financial officer for FCSA, calculated an estimate of the amount Mogensen Bros. would have saved in lower interest rates and patronage between the years 2007 and 2011. We find that it was not in error to order Steven to pay back the $118,448.57 in losses sustained to the partnership.

### (f) Prejudgment Interest

Steven's final assignment of error is that the district court erred in failing to assess prejudgment interest against Keith on the sums Keith owed to the partnership. Steven claims that prejudgment interest began to accrue on payments owed by Keith to the partnership as early as June 26, 2017, when the parties entered into a settlement agreement resolving all issues of the pending litigation, except a final accounting of the partnership's profits and assets. Steven argues that "interest on the amounts Keith owed back to [the] Partnership accrued and the cause of action arose under Neb. Rev. Stat. § 45-103.02(2)." Brief for appellant at 42. We disagree.

[13] Steven's argument for the award of prejudgment interest relies exclusively on recovery under Neb. Rev. Stat. § 45-103.02(2) (Reissue 2010), which provides: "Except as provided in section 45-103.04, interest as provided in section 45-104 shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the entry of judgment." Steven's reliance on § 45-103.02(2) is misplaced. Recovery of prejudgment interest under this section is limited to claims that are *liquidated*. A claim is liquidated when there is no reasonable controversy as to both the amount due and the plaintiff's right to recover. *Brook Valley Ltd. Part. v. Mutual of Omaha Bank*, 285 Neb. 157, 825 N.W.2d 779 (2013). The

- 90 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

very fact that the final accounting had not yet been resolved makes it clear to us that any claim for amounts Keith owed back to the partnership were not liquidated. The accounting by its very nature meant that both the amount due and the right to recover were still in controversy at the time of the parties' settlement of the other issues. Therefore, the district court was not in error for failing to assess prejudgment interest on the amount owed by Keith to the partnership.

## 2. ISSUES ON CROSS-APPEAL

### (a) Interest on Settlement Payments

On cross-appeal, Mogensen Bros. and Keith argue that the district court erred by failing to award interest on the amount owed to Keith and Brian by Steven for a one-third share of the settlement paid to CRSB. They claim the June 30, 2017, agreement between the parties provided that Steven would pay interest on CRSB notes No. 3855 and No. 4050 for the period of August 7, 2015, until the receiver's final report was approved on September 9, 2018. However, we find that the amount of $70,815.22 ordered by the district court to be paid to both Keith and Brian by Steven encompasses the interest on the CRSB notes as contemplated by the parties and that the district court did not err by declining to award further interest.

Within the district court's June 30, 2017, settlement order, the provision related to the CRSB loan amounts provides:

> Steven's Obligation on Matya [sic] Note and General Operating Notes. Steven . . . , for the Matya [sic] property purchased by Mogensen Bros. [and] the operating note of Mogensen Bros.[,] will pay one-third of the principal and interest charges on the note financed through [CRSB] to the date of final Court approval of the Receiver's distribution.

Mogensen Bros. and Keith argue that the district court's order should be modified to award interest on the two CRSB notes from August 7, 2015, until "the date of final Court approval of the Receiver's distribution," on September 9, 2018. However, the evidence shows that the two CRSB notes

- 91 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

were paid off in full on August 7, 2015. Therefore, because the notes were paid off, there could no longer be any interest accruing to be paid to CRSB. The evidence shows that the two notes had principal balances of $200,000 and $194,280.82 with interest amounts of $15,775 and $14,835.50, respectively, on August 7, 2015. In total, the amount paid by Keith and Brian on the notes was $424,891.32. According to the settlement, Steven was to pay one-third of this amount, or $141,630.44. When this amount is split evenly between Keith and Brian, each brother was to receive $70,815.22 from Steven. This is the exact amount ordered by the district court.

As for further interest, owed directly to Keith and Brian, that could have accrued from the date the CRSB notes were paid off until the date the receiver's final distribution was approved by the district court, we agree with the district court that "there was no stipulation as to interest." The interest owed by Steven was that assessed by CRSB on the notes, nothing more. We find no error by the district court.

(b) Keith's Loan Repayments

Keith also cross-appeals the district court's finding that he owes $129,922 back to Mogensen Bros. for loan repayments made to him by the partnership. The district court found that Keith did not adequately account for any loan repayments he received from the partnership since 2009, which Kirchner, the forensic accountant, found to be $110,180 in principal and $19,742 in interest. We agree.

At trial, Kirchner testified that Keith provided a general ledger for Mogensen Bros., as well as various checks that were written from partnership accounts to Keith. Kirchner expressed his professional opinion that the general ledgers and loan transaction reports were inadequate to support the loan repayments made to Keith because they do not explain the purpose of the loan or how the interest amounts were calculated. Although Keith provided an amortization schedule that explains the principal and interest payments made between 1982 and 2005, no such supporting documentation

- 92 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
MOGENSEN BROS. LAND & CATTLE CO. v. MOGENSEN
Cite as 29 Neb. App. 56

was provided for any payments made after June 2005. Without any documentation explaining how the interest amounts were calculated, we agree with the district court that the loan repayments made to Keith since 2009, in the amount of $129,922, were not adequately supported by the accounting. We find no error by the district court in ordering Keith to pay $129,922 back to the partnership.

## VI. CONCLUSION

Based on the foregoing reasons, we find that the district court did not err in ordering Steven to pay $118,448.57 back to Mogensen Bros. We further find that the district court did not err in ordering Keith to pay $129,922 to the partnership. We affirm the judgment of the district court in all respects.

AFFIRMED.