AMERICAN DRIVER SERVICE, INC., APPELLEE, V.
TRUCK INSURANCE EXCHANGE, APPELLANT.
631 N.W.2d 140

Filed July 3, 2001. No. A-00-319.

Michael J. Mills and Jill A. Vinjamuri, of Kutak Rock, for appellant.

Michael D. Monette and Thomas F. Dowd, of Dowd & Dowd, for appellee.

Scott A. Lautenbaugh, of Nolan, Olson, Hansen, Fieber, Lautenbaugh & Geren, for amicus curiae Liberty Mutual Insurance Company and Employers Insurance of Wausau.

Gary J. Russo and John W. Kolwe, of Perret Doise, for amicus curiae National Council on Compensation Insurance.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

This action involves the petition of American Driver Service, Inc. (ADS), for an accounting with respect to overpayment of workers' compensation insurance premiums on policies issued from June 1, 1980, until January 1, 1986, by Truck Insurance Exchange (Truck).

## STATEMENT OF FACTS

ADS is a Nebraska corporation formed in 1973, which, among other things, leases commercial truckdrivers to its customers to enable the customers to transport their own goods and products. Beginning on June 1, 1980, and continuing until January 1, 1986, ADS purchased workers' compensation insurance from Truck.

Kenneth Laubhan, an underwriter for Truck, originally reviewed ADS' application for insurance in 1980. Upon receiving ADS' application, Laubhan was unsure of the correct risk classification code to use for ADS' business, so he contacted the National Council on Compensation Insurance (NCCI) to determine the appropriate code to apply to ADS' leased drivers.

The NCCI served as the statutorily designated rating bureau for workers' compensation insurance in approximately 35 states, including Nebraska. As the statutorily designated rating bureau in this period, the NCCI, among other things, made premium rate filings and established a classification system to which all workers' compensation insurers were required to adhere. The NCCI advised Laubhan in 1980 that it had conducted an inspection of ADS 2 years earlier and that risk classification code 7219

applied. Although Laubhan knew that ADS was in the business of leasing drivers to other companies, Laubhan accepted the NCCI's determination that the correct code for ADS' leased drivers was 7219, and he did not request a new NCCI inspection or make further inquiry at that time.

Approximately 1 year later, Ted Barbee, another Truck employee working with Laubhan on ADS' account, wrote letters dated August 20, 1981, and November 25, 1981, to separate NCCI offices stating that Barbee had received different answers from the NCCI as to how ADS should be rated and that Truck's home office in Los Angeles, California, had received still another answer. Barbee stated in both letters that "we don't know what the correct codes . . . should be." Barbee sought clarification about what codes to apply to ADS, and the NCCI did not indicate to Truck that it was applying an incorrect code to ADS' drivers or that code 7380 should apply to ADS' drivers.

On December 4, 1981, the NCCI responded to Barbee by acknowledging receipt of his letter "requesting an inspection" and stating, "As soon as our inspection has been completed and our reports processed, you will be informed of our findings." However, neither the NCCI nor Truck had any record that an NCCI inspection of ADS' business was conducted between 1980 and 1982. Truck did not follow up on the NCCI's promise to perform the inspection and inform Truck of its findings because, in Laubhan's opinion, Truck had no responsibility to do so. Laubhan admitted that Truck continued to have a question from at least 1981 to 1986 as to whether code 7219 was the proper classification for ADS' leased drivers.

In November 1993, ADS was informed by a prospective customer that ADS' bid on a job was too high because ADS' leased drivers were classified as code 7219 when they should have been classified as code 7380. ADS contacted the NCCI and requested that the NCCI conduct an inspection to determine the correct classification code for ADS' leased driver operation. As a result of the NCCI inspection, the NCCI confirmed by letter dated January 7, 1994, that code 7219 was not assignable to ADS' leased driver business; instead, ADS' drivers should be treated similarly to "temporary labor services," assignable to the codes of ADS' customers or code 7380. Based upon the January 7 letter, ADS sought

a refund of overpaid premiums from Truck, until Truck's counsel stated in a letter, dated February 14, 1997, that ADS' claim was barred by the statute of limitations.

On November 5, 1997, ADS filed a petition seeking an accounting regarding premiums paid for workers' compensation insurance policies issued by Truck from 1980 through 1985. Based on an inspection conducted in 1993 by the NCCI, the entity charged by statute with filing and enforcing a uniform classification system for workers' compensation insurance to which all insurers must adhere, ADS alleged that Truck had applied an incorrect NCCI risk classification code to ADS' leased driver employees. Because the calculation of premiums was based in part on the NCCI code assigned to an insured's employees, ADS asserted that the alleged misclassification resulted in ADS' being overcharged for workers' compensation insurance in the period from June 1, 1980, until January 1, 1986. Further, ADS alleged that a "fiduciary relationship" existed between ADS and Truck and that Truck's alleged breach of its "fiduciary" duty constituted a "constructive fraud" which tolled the statute of limitations until ADS discovered its claim on November 15, 1993. As relief for Truck's alleged breach of fiduciary duty, ADS requested the equitable remedy of an accounting, contending that the amount of the alleged overcharge could not "be determined without an accounting."

Trial in the instant case was held on October 18 and 19, 1999. On October 25, an order was filed in which the district court found, inter alia:

1. That a fiduciary relationship did exist between [Truck] and [ADS];

2. That the Court agrees with [ADS] in their analysis of Braesch v. Union Ins. Co., 237 Neb. 404 (1991), that the insurance company's duty to its insured can be found in the reasonable expectations of the insured and the unequal bargaining positions of the contractants, i.e., [ADS] alleges that it relied on the expertise of [Truck] herein when they contracted with them;

3. That the Court agrees with [ADS'] analysis that a fiduciary relationship existed between [ADS] and [Truck] in that [Truck] had a fiduciary duty to correctly calculate

[ADS'] workers' compensation premium; that [Truck] breached its duty to [ADS] by misclassifying [ADS'] driver payroll; that this breach was the sole cause of [ADS'], as yet, undetermined damages; that [Truck] had superior knowledge or bargaining power; that [ADS] imposed confidence in [Truck]; that [ADS] was dependant on [Truck] due to lack of knowledge of the facts involved; that a constructive fraud and/or trust resulted which tolled the applicable statute of limitations until [ADS'] discovery of its cause of action; that after discovery of its cause of action on November 15, 1993 ([ADS] notified that its driver payroll may have been misclassified), [ADS] timely filed this action.

The court found that Truck's fiduciary duty to ADS included (1) an affirmative obligation to follow up on letters to the NCCI indicating confusion over the correct code to apply to ADS; (2) an affirmative duty, once it was placed on notice that ADS' classification code was erroneous, to attempt to persuade the NCCI to change ADS' classification code; and (3) an affirmative duty to attempt to secure a lesser premium rate classification for its insured based upon ADS' actual business and what Truck knew of ADS' business. Thus, the court determined that from 1980 to 1986, Truck erroneously assigned code 7219 to ADS' business resulting in an overcharging on ADS' workers' compensation premiums and ordered an accounting with respect to a refund of premiums on workers' compensation policies issued by Truck to ADS.

On February 28, 2000, the court held a hearing on ADS' objections to Truck's accounting. On March 2, the court rejected Truck's accounting and entered judgment against Truck in the amount of $564,094.21, consisting of the principal sum of $183,443 and prejudgment interest of $380,651.21. Truck has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Truck's claims can be consolidated into the following issues: The district court erred in (1) failing to find ADS' action barred by the statute of limitations; (2) failing to find ADS' action barred by the doctrine of laches; (3) failing to find

a material variance between ADS' pleadings and proof at trial; (4) failing to find that ADS did not meet is burden of establishing that if an inspection had been performed, a different code would have been assigned; (5) finding that ADS established damages; and (6) awarding prejudgment interest.

## ANALYSIS

Truck's first assigned error is that the district court erred in failing to find that ADS' action was barred by the statute of limitations.

An equity action for an accounting is subject to a 4-year statute of limitations. See, Neb. Rev. Stat. § 25-207 (Reissue 1995); *Fraser v. Temple*, 173 Neb. 367, 113 N.W.2d 319 (1962). A cause of action for an accounting accrues when the plaintiff has " 'the right to maintain and institute a suit.' " *Id.* at 372, 113 N.W.2d at 322.

Pursuant to § 25-207(4), an action for relief on the ground of fraud can only be brought within 4 years. Such action does not accrue, however, until there has been a discovery of the facts constituting the fraud, or facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery. *Bowling Assocs., Ltd. v. Kerrey*, 252 Neb. 458, 562 N.W.2d 714 (1997); *Broekemeier Ford v. Clatanoff*, 240 Neb. 265, 481 N.W.2d 416 (1992).

In the instant case, ADS' claim accrued, at the latest, on January 1, 1986, which was the end of the last policy period; accordingly, the 4-year statute of limitations expired on January 1, 1990. Since ADS' petition was not filed until November 5, 1997, in the absence of grounds sufficient to toll the statute of limitations, ADS' action would be time barred. We therefore proceed to consider whether a reason existed to toll the 4-year statute of limitations until ADS discovered its claim in November 1993.

## FIDUCIARY DUTY

ADS claims that the 4-year statute of limitations should be tolled because a fiduciary relationship existed between ADS and Truck and that Truck's alleged breach of its fiduciary duty constituted a "constructive fraud" which tolled the statute of limitations until ADS discovered its claim in November 1993.

 The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide. *Garrett v. BankWest, Inc.*, 459 N.W.2d 833 (S.D. 1990). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Prochaska v. Douglas Cty.*, 260 Neb. 642, 619 N.W.2d 437 (2000).

 A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995); *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991). The "superiority [of bargaining power] alone does not [suffice to] create a fiduciary duty. There must be an opportunity to influence." *Bloomfield v. Nebraska State Bank*, 237 Neb. at 97, 465 N.W.2d at 149. Additionally, constructive fraud involves a breach of fiduciary duty. *Wolf v. Walt, supra.*

### Braesch v. Union Ins. Co.

The district court, in determining that a fiduciary relationship existed between ADS and Truck, relied upon *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), *disapproved on other grounds, Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413 (1998). In *Braesch*, the Nebraska Supreme Court considered the appropriate standard to apply to an insurer's bad faith in refusing to settle a claim with its policyholder, otherwise known as a first-party claim. After discussing the cause of action for an insurer's bad faith in refusing to settle a claim with a third party as set forth in *Olson v. Union Fire Ins. Co.*, 174 Neb. 375, 118 N.W.2d 318 (1962), the court stated:

Although the court in *Olson, supra*, did not explicitly couch its rationale in terms of a fiduciary relationship between the insured and insurer, that apparently is the theory underlying the liability. In *Hadenfeldt v. State Farm Mut. Auto. Ins. Co.*, 195 Neb. 578, 239 N.W.2d 499 (1976), a case again involving alleged bad faith in refusing to settle a third-party claim, this court cited with approval an instruction that the insurer had assumed a fiduciary position toward the insured. A number of courts ground liability on

the theory of a fiduciary relationship. See, e.g., *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d 255 (Miss. 1988); *Alt v. American Family Mut. Ins. Co.*, 71 Wis. 2d 340, 237 N.W.2d 706 (1976). See, also, 15A G. Couch, Cyclopedia of Insurance Law § 58:6 (rev. 2d ed. 1983).

*Braesch v. Union Ins. Co.*, 237 Neb. at 49, 464 N.W.2d at 773. With regard to first-party claims, the *Braesch* court accepted the view expressed in *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565 (7th Cir. 1978):

"Under third party liability coverage, when the insured is sued by a third party, the insurance company takes over the defense of the suit and the insured cannot settle the matter without the permission of the insurer. *It is this control of the litigation by the insurer coupled with differing levels of exposure to economic loss which gives rise to the 'fiduciary' nature of the insurer's duty.* . . . In the uninsured motorist situation there is no element of 'control' of the insured's side of the litigation by the insurance company which would give rise to a 'fiduciary' duty. *It does not necessarily follow that the insurer is completely free of any obligation of good faith and fair dealing to its insured, since the latter duty is based on the reasonable expectations of the insured and the unequal bargaining positions of the contractants, rather than the insurance company's 'control' of the litigation.*"

(Emphasis supplied.) *Braesch v. Union Ins. Co.*, 237 Neb. at 50-51, 464 N.W.2d at 773-74. Thus, although the Nebraska Supreme Court found that in a first-party claim, the insurer owed the insured the duty of good faith and fair dealing, this duty was not a fiduciary duty, but instead was based upon the reasonable expectations of the insured and the parties' unequal bargaining positions. However, the instant case is not a first-party case because ADS' cause of action is not based upon the coverage obtained under the insurance policy it purchased from Truck; rather, this case is contractual in nature because ADS' claim is based upon its entering into the contracts of insurance with Truck.

OTHER JURISDICTIONS

Additionally, other jurisdictions which have addressed the issue have rejected the contention that an insurer, as a contracting

party, constitutes a "fiduciary" with respect to the insured. In *Corrado Bros. v. Twin City Fire Ins. Co.*, 562 A.2d 1188 (Del. Super. 1989), an insured appealed from a trial court decision awarding judgment to an insurer for a retrospective premium on workers' compensation insurance. The insured argued on appeal that "an insurer's duty in the handling of a claim, having the potential for imposition of a retrospective premium, is to be measured by the standards of a fiduciary." *Id.* at 1192. The Delaware Supreme Court held otherwise, stating:

> The concept of a fiduciary relationship, which derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal and in which the fiduciary is required to pursue solely the interests of the beneficiary in the property. [Citations omitted.] The relationship of insurer and insured, however, arises contractually with each party reserving certain rights under the contract, the resolution of which often leads to litigation.

*Id.* The court concluded that the insurer-insured relationship, although not fiduciary, was subject to good faith and reasonable care analysis. Other cases also considering the issue are as follows: *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 521 (6th Cir. 1999) (court found no fiduciary duty owed to insured by insurer because insurance contract was "typical arm's-length transaction"); *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 n.7 (5th Cir. 1988) ("under Mississippi law . . . there is no fiduciary relationship between an insurance company and its insured . . . . The relationship that does exist is one that is contractual in nature, that of a debtor-creditor type"); *Kanne v. Connecticut General Life Ins. Co.*, 607 F. Supp. 899, 908 (C.D. Cal. 1985) (while insurer's duty of good faith and fair dealing may be "fiduciary in nature, it does not create a fiduciary relationship"), *judgment vacated in part* 867 F.2d 489 (9th Cir. 1988); *Henry v. Associated Indem. Corp.*, 217 Cal. App. 3d 1405, 266 Cal. Rptr. 578 (1990) (insurer under homeowners policy which denied coverage for insured's claim could not be held liable for breach of fiduciary duty absent showing that parties had anything other than ordinary arm's-length business relationship); *Bernhard v. Farmers Ins. Exchange*, 915 P.2d 1285, 1289-90 (Colo. 1996)

("[t]he insurer-insured relationship is a contractual one, created for the mutual benefit of the parties. The insured retains some responsibilities for, and control over, decision-making that distinguish the relationship from one of a true fiduciary nature. To hold otherwise would be to deprive both the insured and the insurer of the mutuality of the contract"); *Corrado Bros. v. Twin City Fire Ins. Co., supra* (relationship between insurer and insured arises from contract and is not fiduciary relationship); *Best Place, Inc. v. Penn America Ins. Co.*, 82 Haw. 120, 130, 920 P.2d 334, 344 (1996) ("an insurer in the first-party situation does not have the same 'control' of the insured's side of the litigation that would give rise to a fiduciary duty"); *McCauley v. Suls*, 123 Md. App. 179, 716 A.2d 1129 (1998) (insurance company owes no fiduciary duty in first-party claim because insured controls litigation and fiduciary duty need not be imposed); *Crossley v Allstate Ins Co*, 155 Mich. App. 694, 400 N.W.2d 625 (1986) (relationship between insurer and insured is not fiduciary in nature); *Cherne Contracting Corp. v. Wausau Ins.*, 572 N.W.2d 339 (Minn. App. 1997) (rejecting plaintiff's contention that its workers' compensation insurer was fiduciary); *Lauzon v. State Farm Mut. Auto Ins. Co.*, 674 A.2d 1246, 1248 (Vt. 1995) (there is "a general misunderstanding of the law regarding first-party insurance claims. An insurer owes no fiduciary duty to its insured in a claim arising under an uninsured motorist provision"); *Safeco Insurance v. Butler*, 118 Wash. 2d 383, 389, 823 P.2d 499, 503 (1992) ("something less than a true fiduciary relationship exists between the insurer and the insured"); *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W. Va. 430, 437, 504 S.E.2d 893, 900 (1998) ("this Court has never recognized that the relationship between an insurer and its insured is in the nature of a fiduciary relationship" (emphasis omitted)). But see *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 980 (7th Cir. 1996) ("[o]rdinarily under Indiana law . . . an insured may bring breach of contract and breach of fiduciary duty claims against his insurer").

APPLICATION

Having considered the aforementioned references, we find that the contractual nature of an insurance policy, see, *Kirwan v. Chicago Title Ins. Co.*, 9 Neb. App. 372, 612 N.W.2d

515 (2000), *aff'd in part and rev'd in part* 261 Neb. 609, 624 N.W.2d 644 (2001), and *State, Div. of Ins. v. Norwest Corp.*, 581 N.W.2d 158 (S.D. 1998), does not give rise to a presumption of a fiduciary relationship between an insured and an insurer. "The reality is that a relationship created by an insurance contract necessarily involves competing interests, which often generate litigation between the insurer and insured." *Cherne Contracting Corp. v. Wausau Ins., supra.* This disparity in interest is not compatible with a fiduciary relationship. See, *id.*; *Corrado Bros. v. Twin City Fire Ins. Co.*, 562 A.2d 1188 (Del. Super. 1989). Thus, there is no presumption of a fiduciary relationship between ADS and Truck created merely because they entered into insurance contracts.

Neither are we persuaded by the argument that a fiduciary relationship existed because Truck "had superior knowledge or bargaining power" and that ADS was dependent on Truck due to lack of knowledge of the facts involved. A similar argument was rejected by the Sixth Circuit Court of Appeals in *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999), wherein the court considered the insureds' claim regarding an alleged breach of fiduciary duty by an insurer.

In *Greenberg*, two sisters were persuaded by an insurance agent to cash out two life insurance policies worth $35,000 and to purchase "single-premium" policies. Twelve years later, the sisters discovered that the insurance company would require substantial additional premium payments to keep their policies in force. The sisters argued that the insurer owed them a fiduciary duty because they did not have the information, ability, or expertise to fully and professionally evaluate the financial transactions they entered into with the insurer and alleged that the insurer possessed superior knowledge upon which they were forced to rely. The Sixth Circuit Court of Appeals disagreed, instead finding that the relationship possessed the qualities of a typical arm's-length transaction, in which the seller possesses more expertise on the item to be sold and the buyer typically relies on the seller's representations. The court further noted that to hold otherwise would impose a fiduciary obligation on the seller of goods and services in a vast multitude of ordinary arm's-length transactions simply on the basis that the

seller possesses superior knowledge of the product being sold. Consequently, the Sixth Circuit found no fiduciary relationship between insured and insurer.

We likewise find that in the instant case, even though Truck may have had superior knowledge or bargaining power and ADS may have relied upon Truck's knowledge, the transactions between Truck and ADS were arm's-length transactions to which no fiduciary duty attached.

## SUMMATION

In sum, we find that although Truck, as an insurer, had a duty to ascertain the proper classification for ADS' policy and calculating ADS' premium, such duty arises under the duty of good faith and fair dealing, not because of a fiduciary duty to ADS. Consequently, the only relationship which existed between ADS and Truck from June 1, 1980, until January 1, 1986, was of insurer and insured, i.e., contracting parties. In the absence of a fiduciary relationship between ADS and Truck, there is no basis for tolling the statute of limitations, and accordingly, the statute of limitations operates to bar ADS' 1997 action for an accounting, which was clearly filed outside of the 4-year statute of limitations.

Finally, we need not address Truck's remaining assignments of error. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

## CONCLUSION

Having determined that Truck owed no fiduciary duty to ADS as a consequence of their insurer-insured relationship, no reason exists to toll the 4-year statute of limitations, and ADS' petition was filed out of time. Consequently, the judgment of the district court is reversed, and the cause is remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.