IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PAGE V. SIEDBAND

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CARL E. PAGE, JR., AND IMOGENE F. PAGE, APPELLEES,
V.
TAMMY S. SIEDBAND AND ALL OTHER OCCUPANTS, APPELLANTS, AND SERVIS ONE, INC.,
DOING BUSINESS AS BSI FINANCIAL SERVICES, AND UMB BANK NATIONAL ASSOCIATION,
SOLELY AS LEGAL TITLE TRUSTEE FOR MART LEGAL TITLE TRUST 2015-NPL1, APPELLEES.

Filed November 14, 2023.    No. A-19-121.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge, on appeal thereto from the County Court for Lancaster County: RODNEY D. REUTER, Judge. Judgment of District Court affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellants.

Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellees Servis One, Inc., and UMB Bank National Association.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Tammy S. Siedband purchased a home in Lincoln, Nebraska, financed by a promissory note with UMB Bank, National Association, solely as Legal Title Trustee for Mart Legal Title Trust 2015-NPL1 (UMB), which note was secured by a deed of trust. Because Siedband failed to make payments on the note, UMB foreclosed on the property and a trustee's sale was held. The property was subsequently conveyed to Carl E. Page, Jr., and Imogene F. Page.

The Pages initiated a forcible entry and detainer action against Siedband. Siedband and all other occupants (collectively "Siedband") filed a third amended third-party complaint against Servis One, Inc., doing business as BSI Financial Services (BSI) (the loan servicer), UMB, and the Pages alleging multiple causes of action.

BSI and UMB (collectively "appellees") filed a motion to dismiss Siedband's claims against them for failing to state a claim for which relief could be granted. The court granted the motion to dismiss, dismissing some causes of action with prejudice and others without. Siedband filed a fourth amended third-party complaint alleging the same causes of action as those in the third amended third-party complaint, including those that had been dismissed with prejudice. Appellees filed a motion to dismiss the fourth amended third-party complaint, which the court dismissed with prejudice. Siedband challenges the court's dismissal of her third and fourth amended third-party complaints. Based on the reasons that follow, we affirm.

## II. BACKGROUND

In December 1994, Siedband acquired title to property located in Lincoln, Nebraska, by a deed which was duly recorded with the Lancaster County Register of Deeds. At all relevant times, the property has been Siedband's primary residence. On July 13, 2007, Siedband financed the property with Wilmington Finance, Inc. The financing consisted of a promissory note and a deed of trust (collectively the "loan"). The deed of trust was recorded with the Lancaster County Register of Deeds on July 19. After the loan was established, Siedband made payments under the terms of the Loan.

In May 2012, Wilmington Finance assigned its interest in the loan to U.S. Bank, National Association (U.S. Bank), and the assignment was recorded.

Between June 2012 and December 2014, Siedband defaulted on the loan four times. Each time, a notice of default was made and recorded by BSI and Siedband cured the default.

In August 2015, U.S. Bank assigned its interest in the loan to UMB and the assignment was subsequently recorded.

By September 7, 2016, Siedband had once again fallen behind on her payments and defaulted on the loan for the fifth time. A notice of default was made and recorded by BSI on that same date.

Siedband alleges that prior to the September 2016 default, she received a letter dated June 29, 2016, from BSI. Siedband was unable to make the payment specified in the letter and alleges that she contacted BSI in response to the letter. Siedband's loan case was assigned to Scott Hanson, a BSI representative. Siedband allegedly discussed her case with Hanson on more than one occasion. Siedband alleges that Hanson requested a variety of financial information from her, "including but not limited to information regarding monthly income and expenses." During the months of August, September, and early October 2016, Hanson allegedly became increasingly more difficult to reach by phone. He was also "not able to come up with a resolution for Siedband's Loan, although he had [allegedly] promised to do so."

In October 2016, Siedband contacted another BSI representative, Christopher Clark. She alleges it was her understanding that the BSI representatives were the ones who could "help her work out the difficulties with her loan arrears." Siedband alleges that between July and October 2016, she made several offers to make payment of a portion of the arrears on her loan, but "all of her offers to make payment were refused."

Sometime between June 29 and August 10, 2016, appellees referred the loan for foreclosure. On August 10, Siedband received a letter from BSI's attorney. Siedband alleges that she did not receive any additional letters or notices. Siedband alleges that she did not contact BSI's

attorney regarding the matter because she was led to believe by Hanson and Clark that she was following the correct procedures and that a solution would be worked out. She alleges she believed and relied upon what she was told by BSI's attorney and representatives and has been significantly harmed as a result.

Ultimately a trustee's sale was held in November 2016 and the Pages were the successful bidders at the sale. BSI made a trustee's deed conveying the property to the Pages and the deed was thereafter recorded in the Register of Deeds Office for Lancaster County, Nebraska. Siedband claims that the sale of the property was void or voidable due to "defective notice" and "due to the fact that no true default existed at the time" of the trustee's sale. She further alleges that she was not provided an effective notice of default and opportunity to cure, nor an effective sale notice prior to the sale of the property in November 2016. And that any attempts to do so were inadequate under Nebraska statutes and under the provisions of her loan. She claims that title to the property is disputed.

On November 22, 2016, the Pages filed a forcible entry and detainer action against Siedband in Lancaster County Court.

On June 2, 2017, Siedband filed a third amended third-party complaint against BSI, UMB, and the Pages. The third amended third-party complaint contained 11 claims for relief: (1) to set aside sale and conveyances; (2) quiet title; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) promissory estoppel; (6) violations of Nebraska Deceptive Trade Practices Act (NDTPA) and the Nebraska Consumer Protection Act (NCPA); (7) violation of Regulation X; (8) misrepresentation; (9) negligent servicing; (10) unjust enrichment—homestead rights and benefits; and (11) unjust enrichment—occupants and claimants rights and benefits.

On June 12, 2017, appellees filed a motion to dismiss, or, alternatively, motion to strike and motion to make more definite the third amended third-party complaint.

On October 10, 2017, the trial court granted the motion to dismiss in its entirety. It found that Siedband had reiterated seven of her previously asserted claims and the allegations were not appreciably different from those in her previous complaints. The court dismissed those claims with prejudice, namely: set aside sale and conveyances, quiet title, breach of contract, breach of implied terms, violations of NDTPA and NCPA, unjust enrichment—homestead rights, and unjust enrichment—occupants and claimants. The trial court dismissed the remaining claims--promissory estoppel, violation of Regulation X, misrepresentation, and negligent servicing—without prejudice.

Siedband filed a motion to alter or amend judgment, and subsequently a motion for leave to amend complaint, with a fourth amended third-party complaint attached. The complaint set out all 11 claims that were set out in the third amended third-party complaint. The trial court denied Siedband's motion to alter or amend judgment and granted the motion for leave to amend complaint regarding the 4 claims that were previously dismissed without prejudice--promissory estoppel, violation of Regulation X, misrepresentation, and negligent servicing.

Appellees filed a motion to dismiss the fourth amended third-party complaint, asking the court to dismiss the complaint with prejudice in its entirety because it failed to state claims upon which relief could be granted. They argued that the complaint failed to alleviate the issues and deficiencies cited by the court in its October 10, 2017, order.

On July 11, 2018, the trial court entered an order granting appellees' motion to dismiss, dismissing the fourth amended third-party complaint with prejudice in its entirety.

Siedband appeals. We note that Siedband filed for bankruptcy in 2019, which delayed this appeal for several years.

## III. ASSIGNMENTS OF ERROR

Restated, Siedband assigns that the trial court erred in granting appellees' motions to dismiss her third and fourth amended third-party complaints.

## IV. STANDARD OF REVIEW

A district court's grant of a motion to dismiss is reviewed de novo. *Marie v. State*, 302 Neb. 217, 922 N.W.2d 733 (2019). When reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusions. *Id.* To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018). The court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations. See *Kellogg v. Nebraska Dept. of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005).

Although courts are limited in their review to the allegations contained in the complaint and any reasonable inferences that may be drawn therefrom, attachments to the complaint become a part of the complaint, and the court may consider those documents in ruling on a motion to dismiss. See *id.*

## V. ANALYSIS

### 1. MOTION TO DISMISS THIRD AMENDED THIRD-PARTY COMPLAINT

We first address the causes of action in Siedband's third amended third-party complaint that the district court dismissed with prejudice in its October 10, 2017, order. These include: set aside sale and conveyances, quiet title, breach of contract, breach of implied terms, violations of NDTPA and NCPA, unjust enrichment—homestead rights, and unjust enrichment—occupants and claimants.

### (a) Set Aside Sale and Conveyances

In her third amended third-party complaint, Siedband first alleges that there were defects in the trustee's sale of the property and the sale should be set aside. She alleges that she and appellees "made a tacit, but enforceable, modified loan agreement, which was, in conformity with [the statute of frauds,] Neb. Rev. Stat. § 36-202, 'in writing, and subscribed by the party to be charged therewith'" and the sale did not comply with the terms of the modified loan agreement. Specifically, she claims that the letter she received from BSI on June 29, 2016, comprised an offer

by appellees, which she accepted, and the combination of the letter and her responsive actions created and constituted an enforceable modification agreement.

The June 29, 2016, letter that Siedband references in her third amended third-party complaint is attached to the complaint, as well as email correspondence she had with a BSI representative. The "letter" and the email correspondences do not create an enforceable loan modification agreement. By its plain and ordinary language, and as captioned, the letter is a "Notice of Default and Intent to Accelerate." It states that she is past due on her payments and provides her with options to cure the default. It does not contain terms and conditions of a modified loan.

Similarly, the email correspondence does not form a binding loan modification agreement. It merely shows that Siedband contacted the BSI representatives to inquire about a plan to resolve delinquency and avoid foreclosure. There is no indication that a resolution had been reached.

Siedband neither alleges nor shows any facts demonstrating that she applied for a loan modification. She offers nothing other than her conclusion that the parties had a valid and enforceable written loan modification agreement.

Siedband also asserts that the sale of the property should be set aside as void or voidable because it did not comply with the provisions of the Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2018). The Trust Deeds Act authorizes a trust deed to be used as a security device and provides that real property can be conveyed by trust deed to a trustee as a means to secure the performance of an obligation. *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013). See also § 76-1002(1). The Trust Deeds Act allows a trust deed to expressly confer upon a trustee the power of sale. See § 76-1005. Pursuant to the power of sale, a trustee can sell the property conveyed by a trust deed without any court's authorization or direction, though the trustee must comply with procedural requirements contained in the Trust Deeds Act. *First Nat. Bank of Omaha v. Davey, supra*.

Although the Trust Deeds Act does not provide a remedy for a defective trustee's sale, the trustor can sue in equity to set the sale aside. *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003). See also *Klein v. Oakland/Red Oak Holdings*, 294 Neb. 535, 883 N.W.2d 699 (2016). Defects in a trustee's sale conducted under a power of sale in a trust deed fall into one of three categories: (1) those that render the sale void, (2) those that render the sale voidable, and (3) those that are inconsequential. *Gilroy v. Ryberg, supra*.

When a trustee's sale is void, no title, legal or equitable, passes to the sale purchaser or subsequent grantees. *Id.* In other words, adversely affected parties may have the sale set aside even though the property has passed into the hands of a bona fide purchaser. *Id.* Defects that render a trustee's sale void are rare and generally occur when the trustee conducted the sale, but no right to exercise the power of sale existed. *Id.* Typical examples include situations when (1) no default on the underlying obligation has occurred, (2) the trust deed is a forgery, and (3) the trust deed requires the beneficiary to request that the trustee commence foreclosure proceedings and no request has been made. *Id.* Further, even if there is a right to exercise the power of sale, an egregious failure to comply with fundamental procedural requirements while exercising the power of sale will render the sale void. *Id.*

The second category of defects consists of those that render the sale voidable. *Id.* When a defect renders a sale voidable, bare legal title passes to the sale purchaser. An injured party can

have the sale set aside only so long as legal title has not moved to a bona fide purchaser. *Id.* To establish a defect that renders the trustee's sale voidable, the party seeking to set aside the sale must show not only the defect, but also that the defect caused the party prejudice. *Id.*

The final category consists of those defects that are so inconsequential as to render the sale neither void nor voidable, and as a result, equity will not set aside the sale. See *id.* Generally, a court will not view a defect as inconsequential if the party seeking to set aside the sale shows that prejudice was suffered because of the defect. See *id.*

Siedband has not alleged any facts to show defects in the trustee's sale of the property that would render the sale void or voidable. She admitted that she had fallen behind on her loan payments and the trustee notified Siedband of the default on June 29, 2016, including notice that the failure to cure the default may result in a foreclosure sale of the property. Thus, the third amended third-party complaint does not show the sale to be void or voidable.

Likewise, even if Siedband could allege a defect in the trustee's sale, her claim is insufficient because she has failed to allege that she suffered any prejudice. In order to establish a defect that render's a trustee's sale voidable, "the party seeking to set aside the sale must show not only the defect, but also that the defect caused the party prejudice." *Gilroy v. Ryberg*, 266 Neb. at 627, 667 N.W.2d at 555. Siedband makes a general allegation that she was prejudiced in that her "conduct would have been different, if the truth were known by her." She does not allege that she could have avoided the sale but for the alleged defect and, therefore, has failed to allege that she suffered any prejudice.

Finally, Siedband alleges under this cause of action that appellees engaged in "dual-tracking" in violation of Regulation X of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 et seq. (2012). Siedband alleges a separate cause of action involving Regulation X which we later address. However, for purposes of Siedband's "Set Aside Sale and Conveyances" cause of action, the "dual-tracking" allegations are not defects in the sale process and are, therefore, unrelated to the trustee's sale.

We conclude that Siedband has not alleged facts that would render the sale void or voidable, and therefore, her cause of action to set aside the trustee's sale of the subject property fails to state a claim upon which relief could be granted.

(b) Quiet Title

Siedband's next cause of action in her third amended third-party complaint seeks to quiet title to the property under Neb. Rev. Stat. § 25-21,112 (Reissue 2016), which provides:

> An action may be brought and prosecuted to final decree, judgment or order, by any person or persons, whether in actual possession or not, claiming title to, or an estate in real estate against any person or persons who claim, or apparently have an adverse estate or interest therein, for the purpose of determining such estate, or interest, canceling unenforceable liens, or claims against, or which appear to be against said real estate, and quieting the title to real estate.

Siedband simply alleges that she "makes her claim under the provisions of such statute." She does not allege that appellees are claiming any "adverse estate or interest" in the property. Appellees were permitted to sell the property under the deed of trust because Siedband failed to

make her loan payments. Appellees sold whatever interest they had in the property to the Pages at the trustee's sale, and at that point, the Pages--not appellees--had an adverse interest in the property. Because Siedband does not allege appellees had an interest in the property adverse to her interest in the property, the district court properly dismissed the quiet title action against appellees with prejudice.

### (c) Breach of Contract

Siedband alleges in her third amended third-party complaint that appellees breached the contract with her by violating the "spirit of the laws passed by Congress and enumerated herein as the 'Home Affordable Modification Program' [HAMP], utilizing terms and/or practices that were unfair and/or unconscionable . . . and failed to pass along to the Siedband [sic] the aid and assistance [appellees have] received and promised to Siedband."

To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract. *RM Campbell Indus. v. Midwest Renewable Energy*, 294 Neb. 326, 886 N.W.2d 240 (2016). Siedband did not allege that she met her obligations under the deed of trust. Rather, she admitted that she fell behind on her payment obligations. Thus, Siedband failed to state a cause of action for breach of contract action against appellees.

### (d) Breach of Implied Terms

We next address Siedband's cause of action for breach of implied terms of the contract wherein she alleges that appellees breached their obligations of good faith and fair dealing.

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. *In re Application of Northeast Neb. Pub. Power Dist.*, 300 Neb. 237, 912 N.W.2d 884 (2018). The nature and extent of an implied covenant of good faith and fair dealing are measured in a particular contract by the justifiable expectations of the parties. *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014). Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party. *Id.* The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. *Id.*

Siedband does not allege in her third amended third-party complaint that the terms of the promissory note or deed of trust contained any provision requiring appellees to modify the loan terms upon default. In fact, the loan agreement expressly authorizes the trustee to foreclose and sell the property in the event of an uncured default. Because an implied covenant does not create rights or duties not otherwise provided for in the existing contractual relationship, Siedband's allegations that appellees were somehow implicitly obligated to modify the deed of trust are insufficient as a matter of law. As a result, we find that Siedband failed to state a claim upon which relief can be granted.

(e) Violations of NDTPA and NCPA

In the third amended third-party complaint, Siedband also alleges violations of NDTPA, Neb. Rev. Stat. § 87-301 et seq. (Cum. Supp. 2022) and NCPA, Neb. Rev. Stat. § 59-1601 et seq. (Reissue 2021). Specifically, she alleges

[t]he lending documentation, the subsequent failure on the part of [appellees] to either adequately communicate with the Siedband [sic], and to make reasonable efforts to follow through with Siedband regarding promises and offers made to Siedband regarding modification(s) to the subject mortgage Loan, and [appellees'] action in proceeding with the scheduled trustee's sale violate the provisions of the [NDTPA] and the [NCPA]. . . .

*(i) NDTPA*

The NDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another" can seek an injunction prohibiting such practices. § 87-303(a). Because the NDTPA provides injunctive relief for "'a person likely to be damaged,'" it provides relief from future damage, not past damage. *Reinbrecht v. Walgreen Co.*, 16 Neb. App. 108, 742 N.W.2d 243 (2007). The NDTPA does not provide a private right of action for damages. See *id*. Therefore, to allege a claim under the NDTPA, Siedband must show a likelihood of future harm.

Appellees sold the property to the Pages at the trustee's sale on November 15, 2016, and the trustee's deed was properly recorded with the Register of Deeds for Lancaster County. Therefore, the damage caused by the trustee's sale cannot be remedied through an injunction. And because Siedband has failed to make allegations that demonstrate a likelihood of any future harm, she is not entitled to injunctive relief. Siedband's allegations fail to state a claim for relief under the NDTPA.

*(ii) NCPA*

The NCPA provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." § 59-1602. Any person who is injured "may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee." § 59-1609. The provisions of the NCPA, however, do not apply to "actions or transactions otherwise permitted, prohibited, or regulated under laws administered by the Director of Insurance, the Public Service Commission, the Federal Energy Regulatory Commission, or *any other regulatory body* or officer acting under statutory authority of this state or the United States." § 59-1617 (emphasis added).

The trial court found that appellees are exempt from the provisions of the NCPA under the language of § 59-1617. The court stated:

BSI is a mortgage lending company regulated by the Nebraska Department of Banking and Finance. UMB is a nationally chartered bank regulated by the Office of the Comptroller of the Currency ("OCC"). Congress vested the OCC with broad authority to regulate the conduct of national banks except where the authority to issue regulations has been "expressly and exclusively" given to another federal regulatory agency. 12 U.S.C. § 93a. As such, the NCPA does not apply to the loan transactions at issue.

- 8 -

We agree with the trial court's analysis. In *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 531 N.W.2d 523 (1995), the Nebraska Supreme Court found that the bank and the loan transaction at issue were heavily regulated by the state and concluded that the trial court's exemption determination under the NCPA was correct. The *Wrede* decision supports the trial court's determination that Siedband's loan with appellees is exempt from the NCPA. Siedband repeatedly alleges that her loan was subject to federal regulation. She also alleges that UMB is a "national bank." As such, it is regulated by the Comptroller of the Currency, which has governing authority over Siedband's loan. See 12 U.S.C. 93a (2012). Because both UMB and the loan are federally regulated, the loan transaction is exempt from the NCPA.

In addition, Siedband failed to allege that any purported unfair or deceptive practices prohibited under the NCPA affected the public interest. The NCPA only applies to unfair or deceptive practices which affect the public interest. *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008). It is not available to redress a private wrong where the public interest is unaffected. *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000) (holding that to be actionable under the NCPA, the unfair or deceptive act or practice must have an impact upon public interest). Because Siedband failed to allege that appellees' actions with respect to the loan affected the public interest, she has failed to state a cause of action under the NCPA.

### (f) Unjust Enrichment-Homestead Rights

We next address Siedband's cause of action in her third amended third-party complaint for unjust enrichment-homestead rights. Unjust enrichment occurs when there has been a transfer of a benefit without adequate legal ground. *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015). Siedband alleges that appellees were unjustly enriched when they disregarded her homestead rights, as expressed in Neb. Rev. Stat. § 40-101 (Reissue 2016).

Section 40-101 provides, in relevant part: "A homestead not exceeding sixty thousand dollars in value shall consist of the dwelling house in which the claimant resides, its appurtenances, and the land on which the same is situated . . . shall be exempt from judgment liens and from execution or forced sale." This exemption is inoperative as against "debts secured by mortgages or trust deeds upon the premises executed and acknowledged by both husband and wife, or an unmarried claimant." Neb. Rev. Stat. § 40-103 (Reissue 2016).

This statutory scheme has no bearing or relevance on the issues of this case, and it does not give rise to a claim against appellees. Siedband does not allege how appellees violated her homestead rights under the statutes or how they have been unjustly enriched. Other than her conclusory statement, she has not provided any facts showing how this statute is applicable to the present action. Siedband executed the deed of trust for the benefit of appellees. Her debt to UMB was secured by the trust deed and, therefore, is not subject to the homestead exemption. Siedband is not entitled to the exemption under § 40-101. We conclude that her cause of action for unjust enrichment-homestead rights was appropriately dismissed with prejudice.

### (g) Unjust Enrichment-Occupants and Claimants

The last of Siedband's causes of action dismissed with prejudice in her third amended third-party complaint was another unjust enrichment claim. Siedband alleges that she is entitled to

reimbursement under the Nebraska Occupants and Claimants Act, Neb. Rev. Stat. § 76-301 et seq. (Reissue 2018). She specifically relies on § 76-311, which provides:

> Sections 76-301 to 76-311 shall apply to all suits wherein any of the claims or rights herein set forth shall be demanded, and such demand for improvements or taxes may be made upon the overruling by the court of a motion for a new trial, or in case the suit is one in equity, then such demand may be made within three days after the entry of decree; *Provided, however*, all of the provisions of said sections shall be limited and restricted to those cases where the title to the real estate in controversy is derived from some source other than that which comes from such tax titles, tax certificates, tax receipts, or the payment of taxes by any person claiming any interest in or title to such real estate, by reason of such tax deeds, tax titles, tax certificates or tax receipts.

(Emphasis in original.)

Siedband alleges that the statute above provides for the making of an application to determine the entitlement to, and the amount of a claim, under the provisions of Nebraska's Occupants and Claimants Act. And in the absence of such a determination, she was and continues to be damaged. She provides no factual allegations explaining how the statute applies, and no allegations that appellees violated the statute. As a result, Siedband has failed to make sufficient allegations to support a cause of action under § 76-311.

### 2. MOTION TO DISMISS FOURTH AMENDED THIRD-PARTY COMPLAINT

We now turn to the causes of action that the court dismissed without prejudice in the third amended third-party complaint and Siedband restated in her fourth amended third-party complaint: promissory estoppel, violation of Regulation X, misrepresentation, and negligent servicing. As previously stated, appellees filed a motion to dismiss arguing that the revisions contained in the fourth amended third-party complaint failed to cure the issues and deficiencies cited by the trial court in its prior order. The trial court agreed and dismissed the four remaining claims with prejudice. We will discuss each of these causes of action in turn.

### (a) Promissory Estoppel

Siedband asserts a claim for recovery under the theory of promissory estoppel. Promissory estoppel is based on a party's detrimental reliance on another party's promise that would otherwise be an unenforceable contract. See *Synergy4 Enters. v. Pinnacle Bank*, 290 Neb. 241, 859 N.W.2d 552 (2015). A claim of promissory estoppel requires a plaintiff to show: (1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise. *Weitz Co. v. Hands, Inc.*, 294 Neb. 215, 882 N.W.2d 659 (2016). A plaintiff claiming promissory estoppel need not show a promise definite enough to support a unilateral contract, but it must be definite enough to show that the plaintiff's reliance on it was reasonable and foreseeable. *Id.*

Siedband's fourth amended third-party complaint alleges:

> The promise made in the BSI Letter, and thereafter by the BSI representatives Hanson and Clark, were all such that BSI and its representatives should have expected the promises

would induce Siedband to rely on those promises and to work with Hanson and Clark, *to catch up her payments, according to past custom*, and to forbear from any other action(s).

(Emphasis in original.) The italicized words are the only difference between the allegations in the third amended third-party complaint and the current complaint.

As the trial court found, the communications upon which Siedband allegedly relied did not indicate any promise. In addition, Siedband did not allege any other oral promises that induced her action or forbearance. Further, promissory estoppel is not a viable theory of recovery for Siedband because the loan document, attached to the fourth amended third-party complaint, demonstrates that it constituted a binding contract between the parties and foreclosure was expressly authorized upon default under the terms of the loan. When an unambiguous contract exists that covers the issue for which damages are sought, promissory estoppel is not a viable theory of recovery. See *Folgers Architects v. Kerns*, 262 Neb. 530, 633 N.W.2d 114 (2001). Therefore, we agree with the trial court that Siedband's fourth amended third-party complaint fails to state a cause of action for promissory estoppel.

### (b) Violation of Regulation X

Siedband's next cause of action asserts that appellees violated Regulation X of the RESPA, 12 U.S.C. §§ 2601 et seq. (2012). The RESPA is a consumer protection statute designed to provide "greater and more timely information on the nature and costs of the settlement process" and to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601. Regulation X sets forth procedures that a servicer must follow when presented with a borrower's "complete loss mitigation application." 12 C.F.R. § 1024.41. It requires:

> [I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower, and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage.

12 C.F.R. § 1024.41(c)(1)(i)-(ii). Section 1024.41(g) further provides:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The service has sent the borrower a notice . . . that the borrower is not eligible for any loss mitigation option . . . ; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option.

A "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

In her fourth amended third-party complaint, Siedband alleges that appellees violated Regulation X by engaging in or failing to engage in certain procedures regarding Siedband and her loan payment delinquency and she is entitled to enforcement of her rights under the provisions of RESPA. She states that Hanson, a BSI representative, "at various times in various conversations, requested a variety of financial information from [her], *which comprised an application for alternatives to foreclosure*, including but not limited to information regarding monthly income and expenses." (Emphasis in original.) Siedband claims she provided all the information which was requested of her.

As the trial court stated, Siedband plausibly alleged that she submitted a complete loss mitigation application. However, she clearly failed to allege sufficient facts from which to infer that the application was timely submitted. As set out above, under § 1024.41(c) and (g), Siedband was required to submit her complete loss mitigation application "more than 37 days before [the] foreclosure sale," which was October 9, 2016, in this case. Siedband has failed to allege any specific date or dates on which she submitted the requested information to BSI. Thus, as the trial court found, Siedband has failed to sufficiently allege that she timely submitted a complete loss mitigation application more than 37 days before the foreclosure sale on November 15, 2016.

Further, even if Siedband's loss mitigation application was timely submitted, her claim still fails because she has not alleged that she sustained any actual damage as a result of appellees' failure to comply with the loss mitigation procedures under 12 C.F.R. § 1024.41 et seq. See *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889 (2011) (dismissing plaintiffs' RESPA claim for failing to allege any factual support or allegations of actual damages). RESPA provides that if a servicer fails to comply with the loss mitigation procedures, the servicer can be held liable for "actual damages to the borrower as a result of the failure," as well as additional damages, not to exceed $2,000, in the case of a pattern or practice of noncompliance. 12 U.S.C. § 2605(f)(1). In the present case, Siedband has not alleged how the failure of appellees to comply with RESPA, as opposed to her default, caused the foreclosure of her home. We agree with the trial court's finding that Siedband's bare allegation that appellees did not comply with the loss mitigation procedures, without any factual support or allegations of damages, is not sufficient to state a RESPA claim.

(c) Misrepresentation

Siedband alleges in her fourth amended third-party complaint that she is entitled to recovery for appellees' fraudulent misrepresentations. A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result. *Cullinane v. Beverly Enters.-Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018). Further, Neb. Ct. R. Pldg. § 6-1109 (b) (rev. 2008) provides, "In all averments of fraud, mistake, or undue influence, the circumstances constituting fraud, mistake, or undue influence shall be stated with particularity."

In the fourth amended third-party complaint, Siedband alleges that BSI and its representatives "knew of [or] should have known" that "the representations and promises made in the BSI letter" were "false and/or were made recklessly" and BSI and its representatives "should

have expected the promises would induce Siedband to rely on those promises and to work with [BSI's representatives] *to catch up her payments as had been past custom*, and to forebear from any other action(s)." (Emphasis in original.) She also alleges that she detrimentally relied on the foregoing promises and as a result, has been damaged.

The trial court found that Siedband simply realleged the allegations of misrepresentation it found insufficient in Siedband's third amended third-party complaint. The only additional language was that which is italicized above. We agree that Siedband's allegations do not contain any misrepresentation. She only makes a general allegation that "representations and promises" made in the BSI letter and by its representatives were false. And as previously noted, what Siedband calls the "BSI letter" is actually the "Notice of Default." In addition, Siedband fails to allege that the foreclosure was due to her reliance on appellees' misrepresentation and not due to her failure to pay the loan. She was already obligated to make payments under the loan and failed to do so.

Finally, because the foreclosure stemmed from her default on the loan, she has failed to allege facts showing the alleged misrepresentation was the proximate cause of her injury. Thus, Siedband has failed to state facts that would support a cause of action for misrepresentation.

### (d) Negligent Servicing

Siedband next alleged a cause of action in negligence against appellees, claiming BSI and its representatives "had a duty toward Siedband to use due care in their dealing with Siedband, by virtue of the lender/borrower relationship."

In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Ecker v. E & A Consulting Group*, 302 Neb. 578, 924 N.W.2d 671 (2019).

The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018). The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Cruz v. Lopez*, 301 Neb. 531, 919 N.W.2d 479 (2018). The existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances. *Rodriguez v. Catholic Health Initiatives*, 297 Neb. 1, 899 N.W.2d 227 (2017).

Based on Siedband's allegations, appellees' relationship with her is based on a loan contract. Because loan contracts are arms-length transactions between self-interested parties, a lender generally does not owe a duty to its borrower in conjunction with making loans. See *Nelson v. Production Credit Ass'n of the Midlands*, 930 F.2d 599 (8th Cir. 1991) (finding no duty of care between lender and borrower in Nebraska law). See, also, *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991) (relationship between bank and borrower was not, by itself, sufficient to establish that bank owed fiduciary duty to borrower); *American Driver Serv. v. Truck Ins. Exch.*, 10 Neb. App. 318, 631 N.W.2d 140 (2001) (transactions where parties have competing interests are not compatible with fiduciary relationship). Thus, no legal duty exists to support Siedband's negligence cause of action.

- 13 -

Further, under Siedband's allegations, the economic loss doctrine prevents her from recovering in tort law. The economic loss doctrine precludes tort remedies where economic losses are (1) caused by a defective product or (2) caused by an alleged breach of a contractual duty, where no tort duty exists independent of the contract itself. See *Thurston v. Nelson*, 21 Neb. App. 740, 842 N.W.2d 631 (2014). Economic losses are defined as commercial losses, unaccompanied by personal injury or other property damage. *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012). The phrase "other property" means property other than the property that was the subject of the contract. *Thurston v. Nelson, supra*. Where only economic loss is suffered and the alleged breach is of only a contractual duty, then the action should be in contract rather than in tort. *Lesiak v. Central Valley Ag Co-op, supra*.

Siedband alleges appellees owed her a duty only by virtue of their contractual relationship and the loss of her home in foreclosure proceedings is the only damage she alleges. Because the property was the subject of the contract with appellees, the losses she alleged were economic losses. Accordingly, as the trial court found, Siedband has not pled sufficient facts to support a negligence cause of action.

## VI. CONCLUSION

After a de novo review of Siedband's causes of action in her third amended third-party complaint that were dismissed with prejudice in the court's October 10, 2017, order, and her causes of action in her fourth amended third-party complaint dismissed with prejudice in the court's July 11, 2018, order, we find she did not state sufficient facts or law to support any of the 11 causes of action she attempted to allege against appellees. We, therefore, affirm the district court's dismissal of Siedband's fourth amended third-party complaint against appellees with prejudice.

AFFIRMED.